**STATE**

v.

**James W. CHRISTODAL.**

**No. 2007–45–C.A.**

Supreme Court of Rhode Island.

May 7, 2008.

Virginia M. McGinn, Esq., Providence, for Plaintiff.

Marie T. Roebuck, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendant, James W. Christodal, appeals to this Court from an adjudication of probation violation. On appeal the defendant contends: (1) that the state did not present credible evidence of a violation and, therefore, the hearing justice acted arbitrarily in finding that the defendant had violated his probation and (2) that the hearing justice imposed an excessive sentence because he failed to consider the totality of the circumstances in fashioning that sentence.

This case came before the Supreme Court for oral argument on April 8, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time.

For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts and Travel

On October 16, 2002, defendant, having pled *nolo contendere* to unlawfully breaking and entering a dwelling located in Bristol, was sentenced to ten years imprisonment; he was ordered to serve one year of that sentence, with the balance suspended for a nine-year probationary period.[1] When the events at issue in this case occurred, defendant was still on probation for that offense.

On July 7, 2006, defendant was involved in a confrontation with a group of people at a park near Queen Anne Square in Newport. As a result of that confrontation, defendant was arrested on charges of malicious injury to property, disorderly conduct, and simple assault. In view of those allegations, the state filed a notice of violation pursuant to Rule 32(f) of the Su-

---

1. General Laws 1956 § 11–8–2 deals with the crime of breaking and entering; it provides in pertinent part as follows:

    "(a) Every person who shall break and enter at any time of the day or night any dwelling house or apartment, whether the dwelling house or apartment is occupied or not, or any outbuilding or garage attached to or adjoining any dwelling house, without the consent of the owner or tenant of the dwelling house, apartment, building, or garage, shall be imprisoned for not less than two (2) years and not more than ten (10) years for the first conviction, and for the second and subsequent conviction shall be imprisoned for not less than four (4) years and not more than fifteen (15) years * * *."

perior Court Rules of Criminal Procedure[2] on July 10, 2006, alleging that defendant had violated the terms and conditions of his probation. A probation violation hearing was held on September 6, 2006, over which a justice of the Superior Court presided.

Several witnesses testified for the state as to the events that took place in the vicinity of Queen Anne Square on July 7, which events formed the basis for the charges of malicious injury to property, disorderly conduct, and simple assault on the part of defendant and also led to the filing of the Rule 32(f) notice.

Fourteen-year-old April LaBonte testified that, on July 7, 2006, at around 8:30 p.m., she was sitting in a park in downtown Newport talking with "a bunch of friends." Ms. LaBonte testified that, at approximately the same time, defendant approached her group of friends and said something to another girl in the group about wanting to hit her on the head with a rock because he claimed that she had taken his bottle of alcohol. According to Ms. LaBonte's testimony, about eight or nine of the friends with whom she had been talking approached defendant to determine what was going on. Ms. LaBonte testified that her friends told defendant to "calm down" and "leave [the girl] alone."

It was further Ms. LaBonte's testimony that, after defendant was confronted, "[h]e got upset and he was saying he wanted to fight." Ms. LaBonte testified that, at that point, one of the males from the group told defendant to calm down because "no one wanted to fight;" she added that defendant then "came at him and started to swing." Ms. LaBonte further testified that she decided to leave at that juncture because she did not want to be involved in the fight, and she waited near the public restrooms for her friend, Michael Gonsalves, to walk her home.

While she was waiting, Ms. LaBonte testified, defendant "had gotten up" and approached her saying, "[D]o you have anything to say?" Ms. LaBonte stated that she immediately called for her friend (Mr. Gonsalves) because she "didn't want to get [defendant] upset or anything." Ms. LaBonte further testified that, as she and Mr. Gonsalves were walking away from defendant, he came up to them, repeatedly asking them whether they wanted a fight. Ms. LaBonte testified that, when defendant swung at Mr. Gonsalves, she pulled him away from a potential fight and the two continued to walk away. She added that, when they had walked approximately "five to ten feet [at] the most" away from defendant, he "got frustrated * * * [and][t]hat's when he picked up a handful of rocks and he threw them." According to Ms. LaBonte's testimony, half of the rocks hit a car window, smashing it, while the other half of the rocks hit the back of her head. She testified that the rocks were "little gravel rocks" and that she suffered two or three lumps on the back of her head. She also testified that she saw defendant throw the rocks, but that she turned away from him so that she would not be struck in the face.

Ms. LaBonte testified that she saw the police arrive at the scene of the confronta-

---

**2.** Rule 32(f) of the Superior Court Rules of Criminal Procedure provides as follows:

"The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such ac-

tion is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

tion in the park shortly thereafter, but that she returned home without talking to the officers because she was concerned about it being dark outside. She also stated that she was concerned that someone might say that she had started the fight. Approximately half an hour after the rock-throwing incident occurred and after discovering that the police had learned about that incident, she went to the police station and gave a statement.

Ms. LaBonte's companion, Mr. Gonsalves, also testified at the probation violation hearing. He testified that he was in the park at Queen Anne Square with a group of friends on the night of July 7. According to Mr. Gonsalves's testimony, defendant "got into a conflict with another girl" and when the group approached the two to see what was going on, defendant "got mad, picked up a bottle, and went after somebody with it." Mr. Gonsalves testified that he and six or seven other people from the group of friends walked over to defendant to see what the argument was about, at which point the contentiousness between defendant and certain members of the group escalated, and the antagonists moved across the street and into a parking lot. On cross-examination, Mr. Gonsalves admitted that the group followed defendant across the street and that they were making fun of defendant, calling him "crazy," "retarded," and "nuts."

Mr. Gonsalves testified that he then began to walk with Ms. LaBonte in the direction of the public bathrooms; while Ms. LaBonte continued on, he stopped at a nearby liquor store to inform his friend that "there's a guy coming this way, crazy." He further testified that, a short time later, he heard Ms. LaBonte call his name and so he left the liquor store. Mr. Gonsalves testified that, when he walked to where Ms. LaBonte was standing, de-

fendant asked him whether he wanted to fight; he added that Ms. LaBonte held him back so that he would not hit defendant, whose fist was clenched and who "was getting ready to hit [him]." Mr. Gonsalves testified that he advised defendant to "get back;" he also stated that he was walking backwards in order to keep an eye on defendant as defendant was walking toward him. Mr. Gonsalves testified that defendant, who was about five feet away, then picked up some rocks and threw them, hitting Ms. LaBonte on the back of the head and breaking the window of a car parked nearby. Mr. Gonsalves stated that defendant thereafter returned to the park; he further testified that he noticed that the police were at the park and that he returned there in order to talk to the officers. Mr. Gonsalves also testified that, later in the evening, he accompanied Ms. LaBonte to the police station once she decided to file a police report.

After both parties had rested, the hearing justice found that defendant had violated the terms and conditions of his probation. After reviewing the testimony elicited at the hearing, the hearing justice found "each of the witnesses presented by the State credible with respect to the important aspects of their testimony." Although the hearing justice opined that defendant may have been "the target of hateful, inappropriate, perhaps even illegal conduct on the part of some of the group" at the park, he further determined that "Mr. Gonsalves was not an aggressor, nor was Ms. LaBonte." The hearing justice then made the following determination:

"In fact, Ms. LaBonte indicated—and I believed her—that she did not want to get further involved because of the escalating arguments involving this defendant and so she, as a preliminary step toward returning home, went over near the public restrooms where she was, at

some point later, joined by Mr. Gonsalves. It was only at this point that the defendant apparently alone and the crowd otherwise dispersed approached Ms. LaBonte and Mr. Gonsalves * * *. I believe that at the operative time that the defendant was the aggressor, that Mr. Gonsalves had seen him swing and attempt a punch or punches at others and that he was inclined to do so if the situation presented itself."

The hearing justice found that defendant had continued to follow Mr. Gonsalves and Ms. LaBonte in "an assaultive or combative type of mode" and that he "purposely picked up rocks or stones and wantonly, purposely, threw them in the direction of Mr. Gonsalves and April LaBonte * * *." Accordingly, the hearing justice ruled that he was reasonably satisfied that defendant had violated the terms of his probation.

In arriving at an appropriate sanction for defendant, the hearing justice noted: (1) that defendant had thirty previous contacts with law enforcement; (2) that his record reflected thirteen convictions for a variety of offenses; and (3) that this was not the first time defendant had appeared before the Superior Court as an alleged violator. The hearing justice pointed to a number of specific criminal incidents involving defendant, including destruction of a fence, fighting with a police officer and threatening to kill a person, and maliciously destroying the front door of a commercial establishment. The hearing justice emphasized the serious nature of what defendant had done during the incident that was described by the witnesses at the violation hearing; the hearing justice noted that defendant had thrown stones at a person only five feet away, and the hearing justice further observed that Ms. LaBonte "could have been scarred for life * * * [and that] [t]he potential for great harm was present."

The hearing justice went on to state that, in view of the evidence presented at the probation violation hearing and the instances of past wrongdoing by defendant, he had been inclined to sentence defendant to serve the entire nine years remaining on his suspended sentence. However, he went on to say that, taking into account both the state's recommendation of three years to serve and defendant's mental health issues,[3] he had instead decided to sentence defendant to serve five years of his suspended sentence rather than the substantially longer term that he had initially considered imposing. A judgment of conviction was entered on September 8, 2006, and defendant filed his notice of appeal on September 15, 2006.

On appeal, defendant contends: (1) that the state did not present credible evidence of a violation and that therefore the hearing justice acted arbitrarily in finding that defendant had violated the terms of his probation and (2) that the hearing justice imposed an excessive sentence and failed to consider the totality of the circumstances in fashioning that sentence.

---

**3.** According to defendant's supplemental memorandum filed in accordance with Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure, on February 10, 2006, defendant was deemed incompetent to stand trial (with respect to another matter) and was admitted to the forensic unit of Eleanor Slater Hospital, where he remained until April 26, 2006.

It will be recalled that the events that were the subject of the Rule 32(f) notice and that are at issue in this appeal occurred on July 7, 2006. Subsequently, on July 10, 2006, defendant was ordered to undergo a psychiatric examination to determine his competency to be subject to the instant probation violation proceedings. As a result of that examination, defendant was deemed competent; a report as to same was filed on August 8, 2006.

## Standard of Review

The sole issue for a hearing justice to consider at a probation violation hearing is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior. *State v. Crudup*, 842 A.2d 1069, 1072 (R.I.2004); *see also State v. Forbes*, 925 A.2d 929, 934 (R.I.2007). The burden of proof on the state at a probation violation hearing is "much lower than that which exists in a criminal trial—the state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." *State v. Bouffard*, 945 A.2d 305, 310 (R.I.2008); *see also Forbes*, 925 A.2d at 934; *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005).

In determining whether or not a defendant has committed a probation violation, the hearing justice is charged with weighing the evidence and assessing the credibility of the witnesses. *State v. Pena*, 791 A.2d 484, 485 (R.I.2002) (mem.); *see also Forbes*, 925 A.2d at 934. With respect to the evaluation of credibility, "we accord great deference to the trial justice's assessment of the credibility of witnesses." *Bajakian v. Erinakes*, 880 A.2d 843, 852 (R.I.2005).

In reviewing a finding of a probation violation, this Court considers only whether the hearing justice acted arbitrarily or capriciously in assessing the credibility of the witnesses or in finding such a violation. *See State v. Bourdeau*, 448 A.2d 1247, 1249 (R.I.1982); *see also Bouffard*, 945 A.2d at 311; *State v. McLaughlin*, 935 A.2d 938, 941 (R.I.2007).

## Analysis

### I

### Sufficiency of the Evidence

The defendant contends that "[t]he state failed to present credible evidence of a probation violation" and that the hearing justice acted unreasonably and arbitrarily in finding that a probation violation occurred. We disagree.

After reviewing the entire record, it is clear to us that the hearing justice did not act arbitrarily or capriciously when he determined that defendant violated the terms and conditions of his probation. As this Court has repeatedly stated, the state does not have to prove beyond a reasonable doubt that an alleged probation violator committed a crime; the state need only reasonably satisfy the hearing justice that a defendant breached a condition of probation by failing to keep the peace or remain on good behavior. *See, e.g., State v. McCarthy*, 945 A.2d 318, 326 (R.I.2008); *Bouffard*, 945 A.2d at 310; *State v. Seamans*, 935 A.2d 618, 623 (R.I.2007).

In the instant case, the hearing justice weighed the evidence and assessed the credibility of each of the witnesses, as is required. In his assessment of that evidence, the hearing justice, while recognizing that defendant was subjected to "hateful, inappropriate, [and] perhaps even illegal conduct" by the group at the park, specifically found that neither Ms. LaBonte nor Mr. Gonsalves was an aggressor. The hearing justice went on to conclude that defendant was, in fact, the aggressor when he approached Ms. LaBonte and Mr. Gonsalves after the group had dispersed. Moreover, the mutually corroborative testimony of Ms. LaBonte and Mr. Gonsalves was uncontroverted; in other words, the hearing justice did not have to accept one version of events over another since the testimony of the two witnesses was substantially similar and no other version of the events was testified to during the hearing. After his review and assessment of the evidence, the hear-

ing justice stated: "[T]he credible testimony which I found was presented by the State, more than reasonably satisfies this [c]ourt that the defendant is a violator."

We conclude that the finding of the hearing justice that defendant violated the terms and conditions of his probation was amply supported by the testimony of the witnesses and that he did not err in making such a determination.

## II

### Alleged Excessiveness of the Sentence Imposed

On appeal, defendant also asserts that the sentence imposed by the hearing justice was excessive. The defendant argues that his original sentence for the underlying breaking and entering charge (to which he pled *nolo contendere* ) was excessive and that he should not have received a sentence of more than eighteen months on that occasion. In addition, defendant contends that the hearing justice at his probation violation hearing did not give due weight to his mental health problems[4] and to the state's recommendation that the hearing justice impose just three years of the nine years remaining on defendant's suspended sentence. Finally, defendant contends that the five years imposed was excessive in light of the hearing justice's statement that defendant had been the target of hateful and perhaps illegal conduct.

■ With respect to defendant's challenge to the original sentence imposed for the breaking and entering charge, we have previously stated that, pursuant to a well-established principle, "when a probationer violates the terms of his or her probation, such conduct triggers liability for the prison term that originally was imposed for the underlying offense." *State v. La-Roche*, 883 A.2d 1151, 1157 (R.I.2005); *see also State v. Burke*, 811 A.2d 1158, 1168 (R.I.2002). Any objection to defendant's original sentence "should have been made within 120 days of the time when the [original] sentence was imposed, pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure."[5] *LaRoche*, 883 A.2d at 1157. Because defendant failed to do so, such an argument "cannot be properly maintained in this proceeding." *Id.*

■ With respect to defendant's argument that the five-year term imposed at the probation violation hearing was excessive, this Court has previously held that hearing justices possess "wide latitude in deciding whether a probation violator's suspended sentence should be removed in whole, in part, or not at all." *State v. Tucker*, 747 A.2d 451, 454 (R.I.2000). Moreover, despite defendant's arguments to the contrary, the record clearly indicates that the hearing justice did, in fact, consider defendant's mental health limitations as well as the state's sentencing recommendation in fashioning the appropriate

---

4. *See* note 3, *supra.*

5. Rule 35 of the Superior Court Rules of Criminal Procedure provides in pertinent part:

"(a) *Correction or reduction of sentence.* The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence when a motion is filed within one hundred and twenty (120) days after the sentence is imposed, or with-

in one hundred and twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal, or within one hundred and twenty (120) days after receipt by the court of a mandate or order of the Supreme Court of the United States issued upon affirmance of the judgment, dismissal of the appeal, or denial of a writ of certiorari."

sentence. In making that determination, the hearing justice stated:

"I would indicate that my initial impression after hearing the evidence and a review of the defendant's record was that a nine year sentence to serve would have been appropriate, but *I considered the Attorney General's recommendation of three years,* and I also consider the fact that this defendant has a great burden. *He has some serious mental health issues* and thus, although no one argued this, I took that into account for purposes of this violation hearing and only for that purpose, *I considered that the defendant might be entitled to something akin to a diminished capacity argument.*

"So, I factored that in and took four years off the sentence I would have otherwise imposed." (Emphasis added.)

It is utterly clear to us that, after finding that the defendant was a violator, the hearing justice did not act arbitrarily or capriciously in fashioning the defendant's sentence. Indeed, it is our view that his thoughtful analysis of the various relevant factors and the resultant sentence struck an appropriate balance between both the defendant's mental health problems and his destructive and criminal behavior.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court.