**STATE**

v.

**Thurston R. HORTON.**

No. 2008–200–C.A.

Supreme Court of Rhode Island.

June 5, 2009.

Jane M. McSoley, Department of Attorney General, for Plaintiff.

Catherine Gibran, Office of Public Defender, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice ROBINSON for the Court.

The defendant, Thurston R. Horton, appeals from a Superior Court adjudication of probation violation following a combined probation violation and bail hearing that took place on May 20 and 21, 2008. At the conclusion of that hearing, the defendant was found to have violated the terms and conditions of his probation, and he was sentenced to serve five years of a fifteen-year sentence that had been previously imposed pursuant to his conviction on one count of assault with intent to commit robbery. A timely notice of appeal was filed on June 6, 2008.

On appeal, defendant contends that the hearing justice "acted arbitrarily and capriciously" in basing his probation violation finding on what defendant characterizes as "highly questionable evidence."

This case came before the Supreme Court for oral argument on May 6, 2009,

pursuant to an order directing the parties to appear and show cause as to why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time.

For the reasons set forth below, we affirm the judgment of the Superior Court.

## Facts and Travel

On February 6, 2002, defendant, having pled *nolo contendere* to one count of assault with intent to commit robbery, was sentenced to fifteen years imprisonment; he was ordered to serve four years of that sentence, with the balance suspended for an eleven-year probationary period. When the events at issue in this case occurred, defendant was still on probation for said offense.

On October 16, 2005, defendant was arrested for possession of marijuana, and the state filed a violation report[1] pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure.[2]

The following year, defendant was charged with additional offenses—*viz.*, (1) assault and battery; (2) using force in resisting arrest; and (3) knowingly obstructing a police officer. Those charges stemmed from certain incidents that occurred on November 7, 2006. The state also filed a Rule 32(f) violation report with respect to those incidents. A January 26, 2007 clerk note indicates that defendant admitted to the violation. He was thereafter sentenced to serve nine months retroactive to November 7, 2006, with 123 months suspended.

The instant appeal relates to yet another Rule 32(f) violation report that stems from defendant's involvement in an alleged burglary in the City of Woonsocket on March 21, 2008. A combined violation and bail hearing was conducted on May 20 and 21 of that same year, at which several witnesses testified.[3]

Fourteen-year-old Catherine[4] testified that, on March 21, 2008, she was babysitting for a young child in the Woonsocket apartment of her former landlord (James) and his girlfriend (Marie). She testified that she heard noises and saw light coming from the apartment's master bedroom; and, being "scared that somebody was in the house," she left the building with the sleeping child and started to go to the apartment of an upstairs neighbor in order to call the police. Catherine further testified that she climbed the exterior platform

1. A clerk note that was filed in the Superior Court indicates that, on November 7, 2005, defendant admitted to the violation referred to in the text. However, the record is silent as to the ultimate disposition.

2. Rule 32(f) of the Superior Court Rules of Criminal Procedure provides as follows:

   "The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

3. Although the hearing giving rise to the instant appeal was a combined probation violation and bail hearing, we shall refer to it simply as a probation violation hearing since no bail-related issues have been presented to us on appeal.

4. We have used a pseudonym for the minor witness in order to protect her privacy. We will refer to all other witnesses by their first names only; we intend no disrespect.

stairs, which passed by the window of the room in which she suspected there was an intruder; she stated that, after passing the window and turning to look down the stairs, she saw defendant climbing out of the window[5] and engaged in a brief conversation with him.

Catherine testified that she knew defendant because he was her mother's former boyfriend; she stated that defendant had lived with her and her mother in one of James's apartments for about two and one-half years, until January of 2008. On cross-examination, she further acknowledged that her relationship with defendant was "bumpy" and that she had written letters to defendant telling him that she "hated" him.

Pawtucket Police Officer Christopher Demers responded to the above-referenced scene at approximately 11:30 p.m. on March 21. He testified that he spoke with Catherine (the babysitter) in the second-floor apartment; he added that, while he was in the process of taking Catherine's witness statement, Marie returned. He further testified that Marie then accompanied him down to the basement apartment. Officer Demers testified that the master bedroom appeared to be in disarray: the mattress was askew, boxes on the floor appeared to have been gone through, and the closet door was open with shoes strewn all over the floor.

James also testified at defendant's probation violation hearing. He testified that Catherine and her mother as well as defendant had lived in the apartment where the burglary occurred until January of 2008—at which time he had them evicted for nonpayment of rent. He stated that, in spite of this, Catherine continued to be the "main babysitter" for his three-year-old daughter. He further testified that,

before leaving the apartment on the night of the burglary, he counted the money that he had collected as rent payments from his various tenants; he said that he then placed $1,400 under his mattress before he left for the evening. He testified that such is his common practice whenever a babysitter stays at his home; he added that he does so in order to "keep the babysitter honest."

James testified that he was called at approximately 11:15 p.m. on March 21—a point in time after the break-in had occurred. He testified that, by the time he arrived at his home, the police had already left. He stated that his bedroom appeared "ransacked" and that the rent money which he had placed under the mattress earlier that evening, as well as $185 belonging to his girlfriend, was missing. He further testified that he did not file a report immediately because the responding police officer advised his girlfriend not to file the report on the weekend.

The defendant presented two alibi witnesses—*viz.*, his girlfriend (Kristine) and her cousin (Diana). Both women testified that they had spent the evening of March 21 at Talus—a bar located approximately one block away from the burglary site. Kristine testified that she had been working as the bartender at Talus that evening and that defendant was present in the bar from approximately 9:00 p.m. until midnight, at which time she asked him to go to check on her daughter at home. Kristine further testified that the bar was a small establishment, that it was not especially crowded, and that she was certain that defendant never left the bar during the evening. Diana testified that she was at the bar all night and that the only time she saw defendant leave the bar was after

**5.** The burglarized apartment was a basement apartment; however, the trial testimony indicates that the windows in the apartment were of standard size.

midnight. She further testified, however, that she "wasn't really paying that much attention" because she was participating in karaoke; she added that she had seen defendant go to the bathroom several times during the course of the evening.

The hearing justice found Catherine to be the most credible of the witnesses, and he ruled that the state had produced legally sufficient evidence to support a finding that defendant had violated the terms and conditions of his probation. The defendant was sentenced to serve five years of his suspended sentence.

## Standard of Review

At a probation violation hearing, the only issue for the hearing justice to consider is "whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. Christodal*, 946 A.2d 811, 816 (R.I.2008); *see also State v. Forbes*, 925 A.2d 929, 934 (R.I.2007); *State v. Crudup*, 842 A.2d 1069, 1072 (R.I.2004). In addition, "[t]he burden of proof on the state at a probation violation hearing is much lower than that which exists in a criminal trial—the state need only show that reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation." *Christodal*, 946 A.2d at 816 (internal quotation marks omitted).

When a hearing justice is called upon to determine whether or not a defendant has committed a probation violation, "the hearing justice is charged with weighing the evidence and assessing the credibility of the witnesses." *Christodal*, 946 A.2d at 816; *see also Forbes*, 925 A.2d at 934; *State v. Pena*, 791 A.2d 484, 485 (R.I.2002) (mem.). This Court accords great deference to the assessment of the credibility of witnesses made by a judicial officer who has had the opportunity to listen to live testimony and to observe demeanor. *Christodal*, 946 A.2d at 816; *see also Bajakian v. Erinakes*, 880 A.2d 843, 852 (R.I.2005). Moreover, this Court has repeatedly held as follows:

"When a probation-violation inquiry turns on a determination of credibility * * * and the hearing justice, after considering all the evidence, accepts one version of events for plausible reasons stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred." *State v. Rioux*, 708 A.2d 895, 898 (R.I.1998); *see also State v. Bouffard*, 945 A.2d 305, 310–11 (R.I.2008); *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005).

When this Court reviews a finding of a probation violation, our focus is solely on "whether the hearing justice acted arbitrarily or capriciously in assessing the credibility of the witnesses or in finding such a violation." *Christodal*, 946 A.2d at 816; *see also State v. McLaughlin*, 935 A.2d 938, 941 (R.I.2007); *State v. Bourdeau*, 448 A.2d 1247, 1249 (R.I.1982).

## Analysis

The defendant contends that the hearing justice "acted arbitrarily and capriciously in finding a violation on the basis of the highly questionable evidence on this record." We disagree. After reviewing the entire record, it is clear to us that the hearing justice did not act arbitrarily or capriciously when he determined that defendant violated the terms and conditions of his probation.

In the instant case, the hearing justice weighed the evidence and assessed the credibility of each of the witnesses. The hearing justice properly noted that the determination of whether defendant violated the terms and conditions of his proba-

tion would be a function of "the believability of the young witness [Catherine] * * * vis-à-vis the testimony of the two alibi witnesses [Kristine and Diana] * * *." In assessing the credibility of the witnesses, the hearing justice noted that Catherine admitted to having stated in the past that she "hated" defendant, but he further observed that there was nothing in her demeanor on the stand to "indicate that she was in any way fabricating her identification of him" or that "she was being anything but truthful." The hearing justice further stated that Catherine was a "credible, believable witness who had no axe to grind * * *." [6]

The hearing justice proceeded to conclude that the two alibi witnesses (Kristine and Diana) were not as credible as Catherine. He specifically noted that both alibi witnesses "certainly have some reason to be less than accurate in their recollection" [7] In summarizing his assessment of the credibility of all the witnesses, the hearing justice found that Catherine "is a much more credible witness * * *." Finally, after reviewing the evidence and assessing the credibility of the witnesses with respect to the conduct of defendant on March 21, 2008, the hearing justice stated that he was "reasonably satisfied" [8] that the state had presented sufficient evidence to show that defendant had violated the terms and conditions of his probation.

We conclude that the hearing justice in this case acted neither arbitrarily nor capriciously in assessing witness credibility and in finding a violation of the terms and conditions of the defendant's probation,[9] and we therefore uphold his ruling.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be remanded to that court.

---

6. The defendant specifically points to the "no axe to grind" statement by the hearing justice to support his contention that the hearing justice acted arbitrarily and capriciously in finding that he had violated the terms and conditions of his probation. Upon reviewing the record in its entirety, it is clear to us that this statement was directed to the hearing justice's determination of Catherine's credibility in her testimony before him. In discussing Catherine's credibility, the hearing justice noted that he found nothing in her demeanor on the stand to indicate that she was falsifying her identification of defendant or that she was being "anything but truthful" in her testimony.

7. The hearing justice went on to note that one of defendant's witnesses was his current girlfriend and the other was the girlfriend's cousin. He further remarked that the location of the bar in which defendant stated he spent the entire evening was a short distance ("the next block over") from the scene of the burglary.

8. See State v. Christodal, 946 A.2d 811, 816 (R.I.2008) ("[T]he state need only show that reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation") (internal quotation marks omitted).

9. See Christodal, 946 A.2d at 816.