STATE

v.

**Michael ENGLISH.**

No. 2010–42–C.A.

Supreme Court of Rhode Island.

June 24, 2011.

Aaron L. Weisman, Department of Attorney General, for State.

Marie T. Roebuck, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The defendant, Michael English, appeals from a Superior Court judgment of conviction adjudicating him a violator of probation. The Superior Court found that the defendant violated the conditions of his probation by not adhering to the terms of a no-contact order. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

In March 1998, defendant pled nolo contendere to four counts of first-degree child molestation, one count of second-degree child molestation, and one count of contributing to the delinquency of a minor, arising out of his relationship with the victim, then thirteen-year-old M.B.[1] The defendant, who was twenty-six years old at the time of his sentencing, was sentenced to twenty years in prison, with eighteen months to serve and the balance suspended, with probation, on each of the four counts of first-degree child molestation; six years, with eighteen months to serve and the balance suspended, with probation, on the conviction for second-degree child molestation; and one year, suspended, with probation, on the conviction for contributing to the delinquency of a minor. The sentences were to run concurrently. In addition, the Superior Court entered a no-contact order, which stated that defendant was enjoined and restrained from any contact with M.B.

Over a decade later, on September 3, 2009, M.B. complained to the North Providence police that defendant had come into contact with her. In light of this complaint, the state filed a probation-violation notice pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure,[2] alleging that defendant had violated the conditions of his probation by failing to adhere to the terms of the no-contact order.[3] It is undisputed that an active no-

1. In the parties' respective prebriefing statements, defendant describes his past relationship with M.B. as "romantic," and the state acknowledges that defendant's "interaction with [M.B.] was criminal, not because it was coercive but, because of [M.B.'s] age."

2. Rule 32(f) of the Superior Court Rules of Criminal Procedure provides in pertinent part:
   "The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such ac-

tion is proposed. * * * Prior to the hearing the [s]tate shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

3. In addition to the probation-violation notice filed in Superior Court, a criminal complaint was filed by the North Providence Police Department in the Sixth Division District Court on September 29, 2009, charging defendant with violation of a no-contact order under G.L.1956 § 12–29–4 of the Domestic Violence Prevention Act. On March 4, 2010, the District Court complaint was dismissed pursuant to Rule 48(a) of the District Court Rules of

contact order was in effect at the time of the alleged violation. A probation-violation hearing was commenced in Superior Court on November 24, 2009. The facts underlying the probation violation as revealed at the hearing may be summarized as follows.

M.B. testified that, around 7:30 p.m. on August 31, 2009,[4] she was outside on the front porch of her home on Campbell Avenue in North Providence, when a truck drove past her home, stopped short, and then backed up. The driver of the truck then exited the vehicle and stated: "Do you know who I am?" M.B. testified that she "was shocked" to see defendant because of the active no-contact order stemming from their past relationship. M.B. stated that she had not seen defendant for thirteen years prior to this incident. The defendant proceeded to express his condolences about her grandmother, who had passed away years earlier. According to M.B., defendant said that he "see[s] [her] all the time," and he asked her: "Can I give you my number so we can get coffee?" M.B. testified that when she declined his offer he got into his truck and drove away. During this entire encounter, which lasted about five minutes, M.B. recalled, defendant remained in the street approximately twenty feet away from her. Later that night, M.B. contacted the North Provi-

dence police, who responded to the scene of the incident; and, on September 3, 2009, she gave the police a signed written statement. Thereafter, M.B. testified, upon learning that defendant lived nearby, she moved out of her house because she "didn't want to be living that close to him" and because he knew where she was living.[5]

The defendant also testified at the hearing, providing a similar account of the events that transpired on August 31, 2009, with a few notable differences. He testified that he was driving along Campbell Avenue after leaving his son's pediatrician's office, which was located near the intersection of Campbell Avenue and Mineral Spring Avenue, and that he was traveling to his employer's warehouse, which was located near the end of Campbell Avenue, on Baird Avenue.[6] The defendant indicated that he had traveled this route in the past and that it was the most direct route from the pediatrician's office to the warehouse. As he was driving along Campbell Avenue, defendant testified, he saw "someone's hand go up as [he] went by a house," and he then stopped and backed up, thinking that someone was signaling to him.[7] The defendant testified that he did not recognize this individual as M.B. until he asked her whether she knew who he was and she responded in the

---

Criminal Procedure, however, because "[t]he crime alleged is not an offense prohibited by statute"; it also was noted on the complaint that the no-contact order at issue "was not a *domestic* [no-contact order]."

4. It is noted that, although the hearing justice referred to September 1, 2009, as the date of this incident, the parties agree that it occurred on August 31, 2009.

5. In his bench decision, the hearing justice remarked that M.B. both "sold her home and moved"; however, it is noted that M.B. testified only that she moved out of her home.

The defendant disputes the fact that M.B. sold her home, though it is undisputed that she moved out after this incident.

6. M.B.'s house was located on Campbell Avenue between the cross-streets Mineral Spring Avenue and Ward Avenue. According to M.B.'s testimony, the truck was heading toward Mineral Spring Avenue before it stopped; defendant, on the other hand, testified that the truck was moving in the opposite direction, away from Mineral Spring Avenue.

7. At the hearing, M.B. denied waving to the moving vehicle.

affirmative. After recognizing M.B., defendant admitted, he apologized to her for "the things [he] did in the past" and expressed his sorrow about her grandmother's passing. The defendant testified that he then returned to his truck and drove away. The defendant denied offering to give his phone number to M.B. or inviting her out for coffee. He further testified that, prior to this incident, he did not know that M.B. lived on Campbell Avenue and that he had not seen her for thirteen years. Finally, defendant testified that he "didn't intend to see her."

After the hearing justice reviewed the testimony, he was reasonably satisfied that defendant violated the terms of his probation by failing to keep the peace and be of good behavior and by knowingly violating the no-contact order. The hearing justice found that the contact between defendant and M.B. "was not coincidental." Although the hearing justice believed that defendant was driving along Campbell Avenue on the day of the incident for purposes unrelated to M.B., he nonetheless reasoned that "there was a point in time clearly" when defendant recognized her and that "after the moment of recognition he should have left * * * and not proceeded to attempt to confer further." In addition, the hearing justice found M.B.'s testimony to be credible when she stated that defendant told her: "I see you all the time." Based on his factual findings, the hearing justice believed that defendant likely knew where M.B. lived even before he stopped his truck on Campbell Avenue and that defendant "certainly" recognized her before he continued conversing with her.

At the conclusion of the hearing on December 1, 2009, the hearing justice ordered defendant to serve five years of the previously suspended sentence for his initial conviction for first-degree child molestation. Thereafter, defendant moved for reconsideration of the determination of probation violation and the sentencing decision. At a hearing on January 21, 2010, the hearing justice denied the motion, reasoning that the Superior Court Rules of Criminal Procedure provided no vehicle for him to reconsider the finding of violation and that the motion to reconsider sentencing was not timely filed.[8] The hearing justice opined that, even if he were to reach the merits of defendant's motion, his determination of violation was well grounded, and the sentence was appropriate and, therefore, would not have merited a reduction.

The defendant filed a notice of appeal on December 18, 2009. On March 1, 2011, this Court ordered the case remanded to the Superior Court for entry of judgment, and the Superior Court entered a judgment of conviction *nunc pro tunc* December 1, 2009.

## II

### Standard of Review

■■■ "The sole issue for a hearing justice to consider at a probation violation hearing is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. Christodal*, 946 A.2d 811, 816 (R.I.2008). The state's burden of proof at a probation-

---

**8.** Citing *State v. Brown*, 821 A.2d 695 (R.I. 2003), the hearing justice ruled that a motion to reconsider sentencing must be filed within 120 days, not from the imposition of the sentence for the instant probation violation, but rather from the imposition of the sentence for the original offense. *See also* Rule 35(a) of the Superior Court Rules of Criminal Procedure ("The court may * * * reduce any sentence when a motion is filed within one hundred and twenty (120) days after the sentence is imposed * * *.").

violation hearing is "much lower" than the standard of beyond a reasonable doubt that exists in a criminal trial; "the state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." *State v. Bouffard,* 945 A.2d 305, 310 (R.I.2008); *State v. Sylvia,* 871 A.2d 954, 957 (R.I.2005). To determine whether the defendant has committed a violation, the hearing justice "weighs the evidence and assesses the credibility of the witnesses." *State v. Pena,* 791 A.2d 484, 485 (R.I.2002) (mem.). This Court gives the trial justice's assessment of the credibility of witnesses "great deference." *Christodal,* 946 A.2d at 816 (quoting *Bajakian v. Erinakes,* 880 A.2d 843, 852 (R.I.2005)). It is well established that "[t]his Court's 'review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" *Sylvia,* 871 A.2d at 957 (quoting *State v. Rioux,* 708 A.2d 895, 897 (R.I. 1998)).

## III

### Discussion

■ On appeal, defendant contends that the hearing justice erred in determining that he violated his probation by failing to adhere to the terms of the no-contact order because his contact with M.B. was merely coincidental and therefore insufficient to constitute a violation of probation. The defendant further argues that he should not have been adjudicated a violator of his probation as a result of a single incident that was not sufficient to support a criminal complaint in District Court for violating a no-contact order.

After carefully reviewing the entire record, we are satisfied that the hearing justice acted neither arbitrarily nor capriciously when he determined that defendant violated the terms and conditions of his probation. As this Court consistently has stated, "the state does not have to prove beyond a reasonable doubt that an alleged probation violator committed a crime; the state need only reasonably satisfy the hearing justice that a defendant breached a condition of probation by failing to keep the peace or remain on good behavior." *State v. Jones,* 969 A.2d 676, 680 (R.I.2009) (quoting *Christodal,* 946 A.2d at 816).

The defendant argues that, based on this Court's holding in *State v. Conti,* 672 A.2d 885 (R.I.1996), one "coincidental" contact is insufficient to sustain an adjudication of probation violation for failing to abide by the terms of a no-contact order. In *Conti,* 672 A.2d at 886–87, we concluded that the defendant's contact with the victim was insufficient to constitute a violation of a no-contact order because there was no evidence to show that the contact was more than mere coincidence. The *Conti* case is distinguishable from the instant case, however, because here there was sufficient evidence presented to the hearing justice to support his finding that defendant's contact with M.B. was not coincidental. The hearing justice, upon weighing the evidence and assessing the credibility of the witnesses, indeed determined that the contact complained of "was not coincidental and that * * * there was clearly a moment after [defendant] stopped his vehicle that [he] knew who this woman was" before he then proceeded to "knowingly engage[ ] her in conversation and offer[ ] future contacts in a manner that the victim found shocking and intimidating."

Although, as defendant notes, the hearing justice found that defendant was not on Campbell Avenue on the day of the incident for the purpose of contacting M.B. and stated that he did not "fault [defendant] for his attempt to apologize [to M.B.]," the hearing justice nonetheless

found that there was "significant credible evidence that [defendant] at least realized with whom he was speaking before he offered to meet her again for coffee." Because defendant frequently traveled in the vicinity of M.B.'s neighborhood, the hearing justice found it likely that defendant had noticed her there before, and he believed M.B.'s testimony that defendant told her: "I see you all the time." The hearing justice also determined that this incident placed M.B. in such fear of future contact with defendant that she decided to move out of her home as a result. Based on those factual findings, the hearing justice was "reasonably satisfied that the defendant was in breach of the terms of his probation requiring that he keep the peace and be of good behavior and that he knowingly violated the no contact order."

In consideration of the findings of the hearing justice, to which this Court accords great weight, we are satisfied that he adequately considered the evidence and properly weighed the credibility of the witnesses in determining that the defendant violated the terms of his probation by failing to keep the peace and remain on good behavior and that the defendant violated the no-contact order by engaging in contact that was more than mere coincidence. Thus, we conclude that the hearing justice's determination that the state's evidence supported an adjudication of probation violation was neither arbitrary nor capricious.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court.