State                         :

v.                            :

John Ford.                    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                               :

John Ford.                         :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, John Ford, appeals from a Superior Court judgment of conviction declaring him to be in violation of his probation and executing thirty months of his previously imposed suspended sentence.  On appeal, the defendant argues that, at his violation hearing, the hearing justice erred in refusing to admit a letter written and sent to him by the state's complaining witness.  Additionally, the defendant asserts that the hearing justice improperly precluded testimony concerning past arguments between him and the complaining witness about the latter's drug use and about whether the complaining witness had brought him drugs when he was in a drug-treatment program.  Finally, the defendant avers that the hearing justice's decision to credit the complaining witness's testimony over his own was unsupported by the record and that, therefore, the hearing justice acted arbitrarily and capriciously in finding a violation.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Procedural History

In 2005, defendant entered pleas of nolo contendere to one count of possession of a stolen motor vehicle or parts and to one count of reckless driving. For the stolen motor vehicle count, defendant was sentenced to ten years at the Adult Correctional Institutions (ACI), consisting of eighteen months to serve and 102 months suspended, with probation. For the reckless-driving count, defendant was sentenced to one year at the ACI, which was suspended, with probation. The sentences were to run concurrently.[1]

On October 27, 2010, while defendant was still on probation, he was arrested by the Warwick police because of a domestic-assault complaint initiated by Tina Bartholomew, defendant's then-girlfriend. At some point during that evening, defendant also suffered an injury to his forehead, but the source of the injury is a point of dispute. The next day, the state filed a probation-violation report under Rule 32(f) of the Superior Court Rules of Criminal Procedure.[2] At defendant's violation hearing, Bartholomew and defendant offered conflicting testimony about the events that transpired that night.

Ms. Bartholomew testified that, after spending much of the afternoon and early evening of October 27 with defendant and her daughter at defendant's apartment and after consuming

---

[1] Subsequently, defendant was declared in violation of his probation and was ordered to serve an additional eighteen months at the ACI, with the remaining seventy-eight months suspended.

[2] Rule 32(f) of the Superior Court Rules of Criminal Procedure provides as follows:

> "The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

roughly four beers, she left the apartment to make a trip to a nearby Burger King with her daughter and a friend. Bartholomew testified that defendant was not at the apartment when she returned, but that he returned a few minutes later, with "blood on his shirt, a fat lip, [and] scrapes." She further stated that when she returned from walking her daughter out to her father's car (he had come to pick her daughter up), defendant "c[a]me out of nowhere," and "just snapped," throwing her to the pavement outside the apartment and hitting her on her face and body. Bartholomew testified that, after he attacked her, defendant calmed down and fell asleep, at which point she went to the apartment upstairs to call 9-1-1.[3] Officers from the Warwick Police Department arrived a short time later, arrested defendant, photographed Bartholomew's face, and took a short, written statement from her. At the hearing, the court admitted two photographs taken by police, and Bartholomew testified that they depicted abrasions and bruises on her face that had been caused by defendant's assault. During cross-examination of Bartholomew, defendant marked for identification the written statement given by Bartholomew to Warwick police describing the alleged assault.[4] Bartholomew testified that before giving her written statement to police, she told them orally what had occurred, and she also explained that she did not provide a more detailed account of the evening's events in her written statement because she had only a third-grade education and, thus, had difficulty reading and writing. She denied striking defendant during the evening and asserted that after he was placed in the police car, defendant started banging his head and "rocking his head like a crazy man." At the hearing,

---

[3] Ms. Bartholomew explained that she used the telephone in the upstairs apartment because she apparently could not get access to an operational telephone in defendant's apartment.

[4] Ms. Bartholomew's written statement consisted of the following:

> "[My daughter] went home and [defendant] started calling me all names and than he hit me in mine nose it really hurt he hit me hard. [R]eally hard it hart bad, and he hit me in me head. [A]ll he does is hit me. I wish to press charges."

The statement was not entered as a full exhibit.

defendant also sought to question Bartholomew about whether she had argued with defendant that day about his refusal to procure drugs for her and whether she had brought drugs to him when he had been staying in a drug-treatment facility. However, the hearing justice sustained the state's objections to this testimony.

The defendant testified at the hearing to his version of events. He stated that on October 27, 2010, Bartholomew consumed about eight beers and that she "was acting very erratic." He testified that Bartholomew left the apartment with her daughter at some point during the evening and that he fell asleep while she was gone. According to defendant, when Bartholomew returned to his apartment, she requested his assistance in procuring drugs for her, which he declined to do.[5] Although the hearing justice prevented defendant from testifying about past arguments between defendant and Bartholomew about her drug use, he did permit testimony from defendant that, after he refused to assist Bartholomew in procuring drugs on October 27, she told him that she would get them from a friend, causing the dispute to escalate. According to defendant, during this dispute, Bartholomew hit him in the head with a bottle, causing a laceration to his forehead that required seven stiches. He testified that he responded by locking Bartholomew out of the apartment and that then he put a paper towel on his wound and went to bed. The defendant attested that he later was awakened by police and taken to Kent Hospital for treatment of his forehead injury before going to the police station. He testified that he did not hit Bartholomew on the evening in question, and he opined that the apparent abrasions to her face captured by the photographs may have been caused by a fall or by acne. The defendant further suggested that Bartholomew's injuries were inconsistent with her description of the events,

---

[5] The defendant explained that he did not support Bartholomew's drug use because, at the time, he believed her to be pregnant with his child.

explaining: "I'm not like a weak guy. I have means, and if I were to punch her in the nose, she would have to have her nose fixed, guarantee that."

The defendant also attempted to introduce an eight-page, handwritten letter from Bartholomew that she sent him after his arrest in which she professed loving feelings towards him and expressed her desire to share a life with him. At the hearing, he argued that the letter was admissible both to show that Bartholomew's reading and writing skills exceeded her own representations, casting doubt on the veracity of her statement to police, and to contradict Bartholomew's in-court statements about her relationship with defendant. The hearing justice refused to admit the letter after clarifying with defendant that he was "not * * * offering it for the truth of the matter asserted," but rather "to impeach [Bartholomew's] credibility based on the fact that she said she couldn't write, and that she could, in fact, write." [6]

---

[6] Although defense counsel initially offered a dual rationale for introducing the letter, when pushed by the hearing justice, he clarified that he sought to introduce the evidence for impeachment purposes:

> "[Hearing Justice]: So the purpose of introducing -- are you limiting the purpose of the letter?
> "[Defendant]: That would be one reason.
> "[Hearing Justice]: * * * [Y]ou want it for the purpose to show that the complaining witness could, in fact, write?
> "[Defendant]: One reason, and then also the context, which --
> "[Hearing Justice]: Does the context at all relate to the allegations that --
> "[Defendant]: As an offer of proof, Judge, I think [the state] would agree, we both had a chance to review the letter, the letter makes no specific reference to, you know, the incident at all. She does make reference to wanting to be with [defendant], not being afraid of [defendant], being in love with [defendant], having the baby with [defendant], and the likewise, and contradicts when she got on the stand, I'm afraid of this guy; gentleman. I just want to be done with this. It's physical evidence, Judge, which contradicts her statement as well. So for those reasons I ask for its admissibility.
> "* * *

After hearing testimony from both witnesses, and noting that his decision "c[a]me down to a question of credibility," the hearing justice found that "Bartholomew's testimony was credible in that she was forced to the pavement, or forced to the ground and struck about her head and face," causing the injuries depicted in the photographs taken by police. Thus, the hearing justice found to his reasonable satisfaction that defendant had violated the terms of his previously imposed sentence and he sentenced defendant to thirty months to serve at the ACI with the remainder of his outstanding suspended sentence still intact. The defendant appeals this determination.[7]

## II

## Standard of Review

At a probation-violation hearing, "[t]he sole issue for a hearing justice * * * is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." State v. English, 21 A.3d 403, 406 (R.I. 2011) (quoting State v. Christodal, 946 A.2d 811, 816 (R.I. 2008)); see also State v. Washington, 42 A.3d 1265, 1271 (R.I. 2012). Probation-violation hearings are "not part of the criminal prosecution," State v. Kennedy, 702 A.2d 28, 31 (R.I. 1997); and, as a result, the "burden of proof at a probation-violation hearing is 'much lower' than the standard of beyond a reasonable doubt" used in

---

"[Hearing Justice]: I'm going to deny that the letter be allowed to be a full exhibit at this point based on your offer of proof. And your offer of proof, it's my understanding that you were not -- just so I have this clear in my head -- offering it for the truth of the matter asserted. You're offering it to impeach the credibility based on the fact that she said she couldn't write and that she could, in fact, write?

"[Defendant]: Yes, Judge.

"[Hearing Justice]: Okay. I'm going to deny it to be made full at this point."

[7] This case previously has been remanded to the Superior Court solely for a determination of defendant's eligibility for bail.

criminal trials.[8] English, 21 A.3d at 406-07 (quoting State v. Bouffard, 945 A.2d 305, 310 (R.I. 2008)).  Furthermore, a probation-revocation hearing "does not call for the full panoply of rights due a defendant in * * * a criminal proceeding." Kennedy, 702 A.2d at 31 (quoting State v. Bourdeau, 448 A.2d 1247, 1248 (R.I. 1982)).  Rather, "the state need only show that reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation." English, 21 A.3d at 407 (quoting Bouffard, 945 A.2d at 310).

"To determine whether the defendant has committed a violation, the hearing justice 'weighs the evidence and assesses the credibility of the witnesses.'" English, 21 A.3d at 407 (quoting State v. Pena, 791 A.2d 484, 485 (R.I. 2002) (mem.)).  In reviewing the hearing justice's determination, "[t]his Court gives the trial justice's assessment of the credibility of witnesses 'great deference.'" Id. (quoting Christodal, 946 A.2d at 816).  "[T]his Court will not 'second-guess' supportable credibility assessments of a hearing justice in a probation-revocation hearing," State v. Jackson, 966 A.2d 1225, 1229 (R.I. 2009) (quoting State v. Johnson, 899 A.2d 478, 482 (R.I. 2006)), and instead "[our] 'review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" English, 21 A.3d at 407 (quoting State v. Sylvia, 871 A.2d 954, 957 (R.I. 2005)).

---

[8] The state points out that defendant was charged criminally in connection with the events of October 27, 2010, but was acquitted by a Kent County Superior Court jury in November 2011. We note that defendant, quite correctly, does not argue that his acquittal has any bearing on his probation-violation proceedings as "[t]his Court previously has declared that, 'since only reasonably satisfactory evidence is required for a probation violation, a defendant's probation may be revoked based on an offense of which the defendant has been acquitted after a criminal trial.'" State v. Tetreault, 973 A.2d 489, 492 n.4 (R.I. 2009) (quoting State v. DiChristofaro, 842 A.2d 1075, 1078 (R.I. 2004)).

**Discussion**

The defendant argues on appeal that the hearing justice erred in excluding Ms. Bartholomew's letter, testimony about prior arguments between the two, and testimony about Bartholomew's "efforts to undermine and sabotage [defendant's] efforts to stay clean and to succeed in drug treatment." Additionally, defendant asserts that the hearing justice's credibility determinations were "so unsupported by the record as to amount to arbitrary and capricious fact-finding."

**A**

**Ms. Bartholomew's Letter**

The defendant advances two bases of error related to the hearing justice's decision to exclude Bartholomew's letter to defendant from evidence. First, defendant asserts that the letter is admissible as substantively relevant because it undermined her testimony, "strongly tended to prove that [defendant] did not viciously assault * * * Bartholomew[,] and * * * suggests that she was remorseful for having split his head open and wrongfully landed him in jail." Second, defendant argues that the letter should have been admitted for impeachment purposes because it tends to show that Bartholomew had stronger reading and writing abilities than she represented. The state counters that even if the letter were substantively relevant, defendant's final proffered objection to its exclusion at the hearing was that it was admissible for impeachment, not substantive purposes, triggering the raise-or-waive rule concerning this new argument. Additionally, the state argues that the decision to exclude the letter for impeachment purposes was within the sound discretion of the hearing justice.

As to defendant's latter argument—that the hearing justice abused his discretion in excluding the letter for impeachment purposes—we note the well-established principle that the decisions of the hearing justice "concerning the admissibility of evidence are 'within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent.'" State v. Gaspar, 982 A.2d 140, 147 (R.I. 2009) (quoting State v. Mohapatra, 880 A.2d 802, 805 (R.I. 2005)).

Here, the record demonstrates that the hearing justice considered, and even clarified, defendant's argument about admissibility, then excluded the letter from evidence. Although the hearing justice did not explicitly state his reasoning, it is evident from the record that he concluded the letter was not relevant to impeach Bartholomew's testimony.[9] In our opinion, the hearing justice may well have concluded that the letter was irrelevant for impeachment purposes because it did not actually undermine Bartholomew's earlier testimony. While Bartholomew's letter was certainly longer than her written statement to police, the letter's vocabulary, spelling, and grammar are generally consistent with her police statement; and, overall, the letter does not clearly undermine her testimony about her reading and writing abilities. Thus, we are satisfied that the hearing justice did not abuse his discretion in excluding the letter for impeachment purposes.

Concerning the first of defendant's arguments—that the evidence was substantively relevant to demonstrate the tone and nature of the relationship between defendant and Bartholomew—we conclude that the raise-or-waive rule precludes our consideration. "As this Court has made clear, the 'raise-or-waive' rule precludes a litigant from arguing an issue on

_____

[9] The state initially objected on the grounds of both hearsay and relevance. In response, defense counsel addressed relevance, but not the hearsay issue, and the exchange between the hearing justice and defense counsel largely explored the purpose for which the letter might be relevant.

appeal that has not been articulated at trial." State v. Brown, 9 A.3d 1240, 1245 (R.I. 2010) (quoting State v. Bido, 941 A.2d 822, 828-29 (R.I. 2008)). Under this principle, a litigant must make a timely and appropriate objection at trial, and the "assignments of error must be alleged with sufficient particularity so it will call the trial justice's attention to the basis of the objection." State v. Grant, 840 A.2d 541, 546-47 (R.I. 2004). The hearing justice specifically asked for clarification about the letter's evidentiary purpose, and defendant ultimately conceded that he sought to introduce the letter only to impeach Bartholomew's testimony about her reading and writing abilities.[10] We, therefore, conclude that by cabining the hearing justice's consideration of the evidence to impeachment only, defendant waived his argument as to its substantive relevance for appeal.

Moreover, even were we not to apply the raise-or-waive rule in this instance, we would conclude nonetheless that the hearing justice did not abuse his discretion in excluding the letter for substantive purposes as irrelevant to the material issues at the violation hearing. The defendant acknowledged at the hearing that there are no specific references in the letter to the events of October 27, 2010, but he now argues that the letter nevertheless is substantively relevant because it indicates Bartholomew's remorse about the events of that evening and undermines the claims that she made about the couple's relationship. Given the tenuous

---

[10] At oral arguments before this Court, defendant posited that, when he responded "Yes" to the hearing justice's question "You're offering [the letter] to impeach the credibility based on the fact that she said she couldn't write and that she could, in fact, write?," he actually meant that impeachment was but one basis for admission, and thus he did not waive his argument that the letter was also relevant for substantive purposes as a prior inconsistent statement. However, as we have explained, "[n]ot only does the [raise-or-waive] rule serve judicial economy by encouraging resolution of issues at the trial level, it also promotes fairer and more efficient trial proceedings by providing opposing counsel with an opportunity to respond appropriately to claims raised." State v. Burke, 522 A.2d 725, 731 (R.I. 1987). By failing to clearly indicate his dual bases for admission of the letter in response to the trial justice's direct inquiry, defendant deprived the state of the reasonable opportunity to respond and prevented the trial justice from adequately considering the issue.

connection between the contents of the letter and the events of October 27, even had this argument properly been preserved, this Court would not conclude that the hearing justice abused his discretion in excluding the letter for substantive purposes. See Gaspar, 982 A.2d at 147.

**B**

**Testimony on History of Arguments and Drug Use**

The defendant next contends that the hearing justice improperly precluded testimony about whether Bartholomew was upset with defendant on the day in question for refusing to help her procure drugs, whether she had attempted to interfere with defendant's drug treatment, whether the couple had argued about her drug use on other occasions, and whether she previously had brought drugs to defendant's apartment. In making these arguments, defendant relies on language from this Court's opinion in State v. Chartier, 619 A.2d 1119, 1122-23 (R.I. 1993), where we explained that a defendant's prior wrongful or criminal acts are admissible under Rule 404(b) of the Rhode Island Rules of Evidence when those prior acts are "interwoven with the offense for which the defendant is being tried." The state responds that although the hearing justice precluded testimony about unrelated past incidents, he did permit similar testimony about Bartholomew's alleged attempts to obtain drugs on the night in question.

The situation here is readily distinguishable from that in Chartier. There, the defendant allegedly had participated in a string of attempted and completed robberies over the course of a single evening, but was tried in connection with only two of the three incidents. Chartier, 619 A.2d at 1121-22. The defendant there sought to exclude all evidence pertaining to the uncharged incident, but the trial court denied this request, reasoning that, under Rule 404(b), the circumstances surrounding the uncharged incident tended to show the defendant's knowledge of his confederates' plans—an issue that was directly material to the charges levied against him.

Chartier, 619 A.2d at 1122-23.  This Court affirmed, noting that, notwithstanding Rule 404(b)'s general prohibition of evidence of other crimes or bad acts, "other acts and conduct of the defendant at different times may be admissible at trial when they are interwoven with the offense for which the defendant is being tried * * *." Chartier, 619 A.2d at 1122-23.

In contrast, here, drug purchases and arguments that allegedly occurred in the days, weeks, or months before the events in question are not directly relevant to any material issue. Moreover, the hearing justice did permit testimony about Bartholomew's alleged attempts to obtain drugs on October 27, 2010—evidence that would tend to support defendant's assertions that the couple quarreled.  We conclude, therefore, that the hearing justice did not abuse his discretion in limiting this testimony.

## C

### Sufficiency of Evidence

The defendant's final argument is that the hearing justice's decision to credit Ms. Bartholomew's testimony over his own amounts to arbitrary and capricious fact-finding.  In probation-violation proceedings, "the state need only show that reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation." English, 21 A.3d at 407 (quoting Bouffard, 945 A.2d at 310).  The hearing justice noted that his conclusion in this case hinged largely on which witness's testimony he found to be more credible.  We again note that "[t]his Court gives the trial justice's assessment of the credibility of witnesses 'great deference,'" id. at 407 (quoting Christodal, 946 A.2d at 816), and we "will not 'second-guess' supportable credibility assessments of a hearing justice in a probation-revocation hearing." Jackson, 966 A.2d at 1229 (quoting Johnson, 899 A.2d at 482).  We will not upset the finding of the hearing justice, who had the opportunity to observe the witnesses firsthand, that Bartholomew provided a

more credible version of the events of October 27, 2010, which was further corroborated by photographic evidence. After carefully reviewing the record, we are satisfied that the hearing justice did not act arbitrarily or capriciously in finding a violation.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**


*Clerk's Office Order/Opinion Cover Sheet*


**TITLE OF CASE:**    State v. John Ford.

**CASE NO:**    No. 2011-43-C.A.
    (P2/05-83A)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  December 12, 2012

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**    Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Brian Van Couyghen

**ATTORNEYS ON APPEAL:**

    For State:   Aaron L. Weisman
              Department of Attorney General

    For Defendant:  Janice M. Weisfeld
              Office of the Public Defender