**STATE**

v.

**Phillip JACKSON.**

No. 2007–123–C.A.

Supreme Court of Rhode Island.

March 20, 2009.

Aaron L. Weisman, Providence, for Plaintiff.

Marie T. Roebuck, Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice WILLIAMS (ret.), for the Court.

The defendant, Phillip Jackson (defendant), appeals an adjudication of a proba-

tion violation ordering him to serve seven years of a ten-year suspended sentence. This case came before the Supreme Court for oral argument on March 3, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On September 27, 2004, defendant entered a plea of *nolo contendere* to one count of possession of a firearm by a person previously convicted of a crime of violence in violation of G.L.1956 § 11–47–5, and to one count of obstructing a police officer in violation of G.L.1956 § 11–32–1. He was sentenced to ten years suspended, with probation on the possession charge, and one year suspended, with probation on the obstruction charge.

On August 24, 2006, a criminal complaint was filed against defendant for assault or battery in violation of G.L.1956 § 11–5–3, against Richard Cole, a seventeen-year-old neighbor. The defendant thereafter was presented with a notice of violation of his probationary status under Rule 32(f) of the Superior Court Rules of Criminal Procedure. A probation-violation hearing was held in the Superior Court on October 26 and 30, 2006.

At the hearing, the complaining witness, Mr. Cole, testified that on August 21, 2006, at approximately 5:15 p.m., he was sitting with three friends on the side of the road, across from defendant's house. The four noticed defendant drive by in his car, and slow down to glare at them, before entering his home. Mr. Cole then testified that defendant emerged from his house a few minutes later, angrily smashing a pile of rocks in his yard. Then, according to Mr. Cole, defendant asked the boys whether they had a problem, and struck Mr. Cole twice in the face: once with an open-handed slap, then with a closed fist. The defendant next accused him of certain acts of vandalism, which he denied. These denials apparently appeased defendant, who quickly became friendly and invited Mr. Cole to share two gallons of rum with him later that evening.

Of Mr. Cole's three friends who stood with him throughout the incident, two testified. Their renditions of the events were consistent with Mr. Cole's.

Patricia Cole, the complaining witness's mother, testified that, as she was arriving home after work on August 21, 2006, she noticed her son and his friends "socializing" with defendant, which she thought odd. She stopped to ask what was going on, and defendant responded that the five were "just having a little neighborhood talk." But, she noticed that her son would not make eye contact with her, and that the other boys all "had the same look on their face, which is very unusual." She further testified that two days later she noticed a bump on her son's head, at which time he told her that defendant had struck him. She then reported the incident to the Charlestown Police Department.

The defendant presented two witnesses: Edward Bissell and Stephanie Banks, who lived together across the street from defendant. At the time of the incident, Mr. Bissell, who acknowledged that he has poor eyesight and was not then wearing his glasses, testified that he was working on his automobile outside of his home when he noticed a "heated confrontation"—approximately one hundred feet

away from him—but maintained that he never saw defendant strike Mr. Cole. Although Mr. Bissell had planned to ask defendant for help with his automobile, when he observed "a little bit of yelling" between defendant and the four boys, he decided not to approach him. He recalled that the situation calmed down and the parties shook hands.

Ms. Banks testified that at the time of the incident she was making dinner in her home across the street when she heard the boys, who she said had a reputation for mischief, taunting defendant with profanities. The defendant "yell[ed] back at them," she testified, but the conversation soon became amicable, ending with defendant's shaking hands with one of the boys. The defendant never hit anyone, she testified.

At the close of the evidence, the hearing justice issued a bench decision, noting with specificity the witnesses' respective testimonies. He found the state's witnesses credible, but found incredible any contrasting aspects of the defense witnesses' testimony. Having found that defendant had indeed attacked Mr. Cole, the hearing justice concluded that defendant had violated the terms of his probation.

The state urged the court to require defendant to serve his entire ten-year suspended sentence based on the severity of his prior criminal activity and his "extensive [criminal] history" in Massachusetts, including a 1991 sentence of five to ten years for assault with intent to murder, a 1986 larceny, and "simple assaults." Although, as the hearing justice noted, defense counsel had presented little mitigating information about defendant, he sentenced defendant to serve seven of the ten years suspended and continued three years of probation. Judgment was entered on October 31, 2006; defendant filed a timely appeal.

While his appeal was pending, defendant moved this Court to remand the matter to "reopen the proceedings." We granted that request on May 31, 2007. A hearing was held in accordance therewith on January 18, 2008; the hearing justice treated defendant's motion as one for reconsideration of the sentence and for one alleging ineffective assistance of counsel. The defendant argued he was making a due-process claim because of his concern that, upon sentencing him, the hearing justice "had absolutely no information" about him. In addition to considering the severity of the underlying crime, defendant argued, the hearing justice should have been made aware of defendant's gainful employment history, his guardianship over children with emotional-and physical-abuse issues, his family's financial stress, and his participation in anger-management counseling. Moreover, defendant argued that the hearing justice should have been informed that a restraining order had been issued against the Coles for harassing his family, and that his simple-assault charge against Mr. Cole had been dismissed. Finally, he argued that he was "disturb[ed]" that a charge of assault with intent to commit murder had been brought to the court's attention when, in fact, it had been dismissed.

The hearing justice denied defendant's motion, recalling that the violation hearing had been extensive. He noted that although the simple-assault charge that prompted the violation hearing was dismissed—because "the complaining witness would prefer not to go forward"—it did not affect his decision that defendant had failed to keep the peace and be of good behavior on the day he confronted the four boys. He further held that:

"[The] underlying offense * * * was certainly a very serious case, also very serious charges to which the defendant

pleaded. There were numerous weapons found in his possession at the time, also a number of firearms, knives, so-called Ninja weapons. And also, my recollection is that [defendant], after this case was adjudicated, * * * wherein he received an extremely favorable or lenient sentence of a suspended sentence on a gun charge, particularly with his criminal history, was also sentenced or apparently picked up another charge here in Washington County and wasn't violated. So he had also received the benefit of that. * * * Also, he had a very significant criminal record dating back many years, 15 years or more both in the State of Rhode Island as well as in the Commonwealth of Massachusetts for very serious crimes * * *.

"[F]rankly, he had a ten-year suspended sentence. He was looking at ten years to serve. And the Court, despite, as I say, a bad criminal record, repeat offender, violent crimes, gave him less than that, seven years."

The defendant again filed a timely appeal.

## II

## Analysis

Before this Court, defendant argues that the hearing justice's credibility determinations were both unreasonable and arbitrary. Secondly, he argues that the sentence imposed was excessive and that, upon reconsideration, the hearing justice failed to consider mitigating information presented on his behalf.

## A

## The Sufficiency of the Hearing Justice's Decision

## 1

## Standard of Review

■ "At a probation violation hearing, the sole issue for the presiding judicial officer to consider is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. Pitts*, 960 A.2d 240, 244 (R.I.2008) (quoting *State v. Bouffard*, 945 A.2d 305, 310 (R.I.2008)). The burden of proof upon the state in such a hearing is far less rigorous than the "beyond a reasonable doubt" standard typical of criminal trials; indeed, "the state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." *Id.* (quoting *Bouffard*, 945 A.2d at 310). It is the duty of the hearing justice to weigh the relevant, material evidence and assess the credibility of the witnesses. *State v. Pena*, 791 A.2d 484, 485 (R.I.2002) (mem.). And this Court will not "second-guess" supportable credibility assessments of a hearing justice in a probation-revocation hearing. *State v. Johnson*, 899 A.2d 478, 482 (R.I.2006). We consider "only whether the hearing justice acted arbitrarily or capriciously in assessing the credibility of the witnesses or in finding such a violation." *State v. Christodal*, 946 A.2d 811, 816 (R.I.2008).

## 2

## The Hearing Justice's Findings and Conclusions

■ A review of the entire record demonstrates that the credibility determinations of the hearing justice were neither arbitrary nor unreasonable. Indeed, in accordance with his duty, the hearing justice issued an opinion detailed with specific references to the relevant, material testimony, replete with his credibility determinations. For instance, it was reasonable for the hearing justice to give a lesser weight to the testimony of Mr. Bissell, who admitted having poor eyesight and who denied ever seeing defendant, from across

the street, strike Mr. Cole. Additionally, the hearing justice reasonably found Ms. Banks incredible, when she testified that defendant had approached the boys in response to their taunting him—a fact not mentioned by Mr. Bissell, who was outside, and presumably better positioned to observe the encounter.

On the other hand, the testimonies of Mr. Cole's two friends, present alongside him at the time of the confrontation, were entirely consistent with that of the complaining witness-both saw defendant strike Mr. Cole in the manner he originally described.

██ The hearing justice's decision to credit the testimony of the state's witnesses, and thus find that defendant had struck Mr. Cole, rightly led to the conclusion that defendant "failed to keep the peace and be of good behavior," thus violating the terms of his probation. *See State v. House,* 889 A.2d 231, 232 (R.I. 2006) (mem.) (holding that a defendant's "aggressive conduct" and "shoving" of another individual violated the terms of his probation).

## B

### The Sentence Imposed

██ The defendant's second point of error is that the hearing justice's imposition of a seven-year prison sentence was excessive. In addition, defendant asserts that the hearing justice "basically ignored" the mitigating information presented at the reconsideration hearing and therefore abused his discretion.

██ A hearing justice "possess[es] 'wide latitude in deciding whether a probation violator's suspended sentence should be removed in whole, in part, or not at all.' " *Christodal,* 946 A.2d at 817 (quoting *State v. Tucker,* 747 A.2d 451, 454 (R.I. 2000)). Here, the sentence imposed was

not an abuse of discretion; the hearing justice included in the record a multitude of factors which led to his determination that defendant should be sentenced to serve seven years of his ten-year suspended sentence. Notably, the hearing justice detailed defendant's criminal history, which included incidents of violent crime.

In addition, although defendant argues that the hearing justice ignored mitigating facts presented in his favor, the record, though limited on this issue, demonstrates the contrary. Ruling upon defendant's motion for reconsideration, the hearing justice noted that he originally had not been presented with such information about defendant; but, after considering "these additional arguments," including "the fact that his wife and children have to suffer," remained convinced that the opposing factors reflected by defendant's criminal history justified the sentence imposed.

The record makes clear that the hearing justice made a sufficient and reasonable analysis of the relevant factors; we will not disturb the sentence.

### Conclusion

For the foregoing reasons, we deny and dismiss the defendant's appeal. The papers are remanded to the Superior Court.