STATE

v.

Adrian SHEPARD.

Nos. 2010–59–M.P., 2010–184–C.A.

Supreme Court of Rhode Island.

Dec. 27, 2011.

Christopher Bush, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The defendant, Adrian Shepard, by way of a petition for writ of certiorari, seeks review of a Superior Court judgment declaring him to be in violation of the terms of his probation and revoking three years of an eight-year suspended sentence. He also appeals from a Superior Court order denying his motion to correct and reconsider his sentence. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this petition and appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that the issues may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm both the judgment and order of the Superior Court.

## I

### Facts and Procedural History

On May 6, 2004, defendant pled nolo contendere to one count of conspiracy to commit a felony, for which he was sentenced to ten years at the Adult Correctional Institutions (ACI), consisting of two years to serve and eight years suspended, with probation (the 2003 case). On April 5, 2006, defendant was found to have violated the terms of his probation, resulting in the revocation of ten months of his suspended sentence.[1]

The defendant's second sojourn in prison failed to achieve rehabilitation because defendant again was arrested and charged with possession of cocaine with intent to deliver (the 2007 case). He eventually pled nolo contendere to an amended charge of possession of cocaine and was sentenced to eight years at the ACI, with twenty months to serve and seventy-six months suspended, with probation.[2] Upon his release from the ACI, defendant was arrested yet again, this time for an alleged domestic assault upon Deanna Monroe, the mother of his son.[3] As a result of this incident, defendant was presented as a violator of his probation in both the 2003 and 2007 cases.

On June 9, 2009, defendant's violation hearing was held in the Superior Court. The state presented two witnesses: Detective Sarkis Zeitountzian of the Providence Police Department and Ms. Monroe, the complaining witness. Detective Zeitountzian testified that on March 14, 2009, he responded to Women and Infants Hospital to meet with the victim of an alleged sexual assault. At the hospital, he introduced himself to Ms. Monroe, the alleged victim, whom he described as having a "black eye under her left eye," which was "clearly bruised." He estimated that this injury was two to three days old.

Ms. Monroe testified about two particular incidents involving defendant. The first occurred on March 11, 2009, when defendant arrived at her residence while she was taking a shower. She testified that defendant walked into the bathroom and threatened her, saying, "I'll leave you dead in the shower." Ms. Monroe said she had confronted him earlier in the day

---

**1.** The remaining eighty-six months of the eight-year sentence remained suspended, with probation.

**2.** As will be discussed in footnote 4, *infra,* the eight-year sentence exceeded the maximum permissible penalty for a possession conviction.

**3.** A criminal complaint for domestic assault also was filed against defendant in District Court.

about his relationship with her cousin. According to Ms. Monroe, when she got out of the shower defendant asked her "to do a sexual favor for him," which she refused. They then started "tussling," which she described as defendant trying to hold her down as she attempted to push him off. She further testified that she "finally just stopped resisting and * * * let him have sex with [her]." Ms. Monroe stated that she suffered a black eye in this scuffle. Ms. Monroe also described a second incident on the following evening at the same residence. She testified that she resisted as defendant tried to touch her "private areas" and have sex with her.

Two days later, Ms. Monroe called the police to report these two incidents. She testified that a police officer came to her residence, took pictures of her eye and brought her to the emergency room, where she later met with and gave a statement to Det. Zeitountzian. Ms. Monroe further acknowledged that on March 16, 2009, while in the presence of defendant, she called the police to modify her statement. During that call, she told Sergeant Merandi "that the violence did happen but the sexual assault didn't happen." She testified that she made this telephone call and partially recanted her original statement because defendant had told her that he would "kill [her] before he [went] to jail for rape." Ms. Monroe swore that her testimony at the violation hearing was true and that her recantation was a lie.

The defendant presented no witnesses, but introduced into evidence two police reports and a tape recording of a phone conversation between Ms. Monroe and defendant. The hearing justice summarized the contents of the recording as follows:

> "The tape of the conversation between the complaining witness and the defendant shortly after these incidents was played for the [c]ourt, and in that tape,

it seems clear that there was reference to the complaining witness saying to the defendant that she wanted to keep the relationship together for the benefit of the child and that if she had to, she could testify against him to get him in jail to keep him away from the cousin."

In his closing argument, defendant characterized Ms. Monroe's testimony as "completely unreliable." According to defendant, Ms. Monroe falsely accused him of sexually assaulting her because she was angry that he was dating her cousin. The most telling evidence of her mendacity, he suggested, was the tape recording in which she is purported to have said that "if she had to put him in jail to keep him away from 'that bitch' then that is 'what the fuck she was going to do.' "

In his bench decision, the hearing justice explained that "cases like this are never clear cut and that's the reason why the [c]ourt, ultimately, has to make determinations as to credibility." He acknowledged that Ms. Monroe "had some inconsistencies in her testimony," but he concluded that he was "confident, after hearing her testify, that the thrust of her testimony [was] accurate." Ultimately, the hearing justice found that defendant did violate his probation in relation to this incident:

> "So, while there are some inconsistencies in [the complaining witness's] testimony, the thrust of it is believable and I accept it. And, I think as a result of that, enough has been shown to me that he was assaultive on the night in question, that there was a battery resulting in the injury that was described by the police officer, and because he did not keep the peace and was not of good behavior, I believe the State has proven this to the Court to a reasonable satisfaction and I find that he is in clear violation of the probation that he is on."

Consequently, the hearing justice revoked three years from the remaining eighty-six-month suspended sentence in the 2003 case. The defendant's sentence for the 2007 case was left unaltered. Later that month, defendant filed a timely notice of appeal; however, this appeal was filed only in relation to the 2007 case, not the 2003 case.

On January 14, 2010, the sentencing justice in the 2007 possession of cocaine case, *sua sponte*, corrected defendant's original eight-year sentence to the statutory maximum sentence for that crime of three years of incarceration, consisting of twenty months to serve, retroactive to June 6, 2007, and sixteen months suspended, with probation.[4] Meanwhile, the domestic-assault charge, which formed the basis of defendant's violation charge, was dismissed voluntarily by the state in District Court, under Rule 48(a) of the District Court Rules of Criminal Procedure. Several months thereafter, defendant filed a motion to correct and reconsider the sentence he received for violating his probation. In this motion, defendant requested that the "drastic remedy of imposing three years to serve in prison" be reconsidered under Rule 35 of the Superior Court Rules of Criminal Procedure and that the hearing justice order his release from custody.

At the hearing on defendant's motion, defendant acknowledged that because the hearing justice had not revoked any portion of his suspended sentence in the recently corrected 2007 case, the three-year sentence imposed was not an illegal sentence.[5] He still wished to be heard on his motion to reconsider, however, arguing that the hearing justice should reconsider the three-year prison sentence in light of the dismissal of the underlying domestic assault charge. The hearing justice allowed defendant to proceed on the motion. At the conclusion of the hearing, the hearing justice noted that a subsequent dismissal of the underlying charges upon which a violation is predicated does not require the violation adjudication to be vacated. He then explained why he determined the sentence to be appropriate, and denied defendant's motion.

The defendant filed a notice of appeal from the hearing justice's decision on February 3, 2010, which we treat as timely, notwithstanding the fact that the order denying defendant's motion to reconsider was not filed until May 7, 2010. *See State v. Pona*, 13 A.3d 642, 646 n. 3 (R.I.2011) (noting that this Court will treat a premature appeal as timely when defendant files the appeal before judgment was entered).[6]

On February 22, 2010, defendant filed a petition for writ of certiorari seeking re-

---

**4.** The maximum penalty for possession of a schedule I through IV controlled substance, the amended charge to which defendant pled, is three years. *See* G.L.1956 § 21–28–4.01(b)(2)(i).

**5.** At the hearing on the motion, defendant conceded that Rule 35 of the Superior Court Rules of Criminal Procedure was not the proper mechanism to bring his motion to reconsider before the court. On appeal, defendant argues in his supplemental memorandum that his motion was proper under Rule 60(b) of the Superior Court Rules of Civil Procedure.

**6.** On January 13, 2011, the parties were directed by this Court to "submit supplemental Rule 12A statements addressing the issue of whether the defendant's motion to correct and reconsider sentence was a legitimate motion, such that the hearing justice's ruling therein was properly appealable to this Court." At oral argument, however, defendant posited that we need not reach that issue because the concerns raised by the motion to correct and reconsider are reviewable within the context of the writ of certiorari. We shall not address, therefore, the propriety of such a motion under the circumstances of this case.

view of the probation violation adjudication in the 2003 case, which we granted on April 22, 2010. We also granted defendant's motion to consolidate all his appeals; however, defendant has since withdrawn his original appeal of the 2007 case.

## II

### Standard of Review

■ "The sole issue for a hearing justice to consider at a probation[-]violation hearing is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. English*, 21 A.3d 403, 406 (R.I.2011) (quoting *State v. Christodal*, 946 A.2d 811, 816 (R.I.2008)). The "burden of proof at a probation-violation hearing is 'much lower' than the standard of beyond a reasonable doubt" in a criminal trial. *Id.* at 406–07. "[T]he state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." *Id.* at 407 (quoting *State v. Bouffard*, 945 A.2d 305, 310 (R.I.2008)).

■ "To determine whether the defendant has committed a violation, the hearing justice 'weighs the evidence and assesses the credibility of the witnesses.'" *English*, 21 A.3d at 407 (quoting *State v. Pena*, 791 A.2d 484, 485 (R.I.2002) (mem.)). "This Court gives the trial justice's assessment of the credibility of witnesses 'great deference.'" *Id.* (quoting *Christodal*, 946 A.2d at 816). "[T]his Court will not 'second-guess' supportable credibility assessments of a hearing justice in a probation-revocation hearing." *State v. Jackson*, 966 A.2d 1225, 1229 (R.I.2009) (quoting *State v. Johnson*, 899 A.2d 478, 482 (R.I.2006)). "It is well established that '[t]his Court's review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice

acted arbitrarily or capriciously in finding a violation.'" *English*, 21 A.3d at 407 (quoting *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005)).

■ "This Court's review 'on writ of certiorari is limited to examining the record to determine if an error of law has been committed.'" *State v. Faria*, 947 A.2d 863, 867 (R.I.2008) (quoting *Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.*, 891 A.2d 838, 840 (R.I.2006)). "Questions of law * * * are not binding upon the [C]ourt and may be reviewed to determine what the law is and its applicability to the facts." *Id.* (quoting *Hometown Properties, Inc. v. Rhode Island Department of Environmental Management*, 592 A.2d 841, 843 (R.I.1991)). "We reverse only when we find pursuant to the petition that the lower-court judge committed an error of law." *Id.* (quoting *Boucher v. McGovern*, 639 A.2d 1369, 1373 (R.I.1994)).

## III

### Discussion

#### A

### The Violation Finding

■ The defendant first argues that the hearing justice erred in finding that the state presented sufficient evidence to meet the burden of reasonable satisfaction to find that defendant violated his probation. Specifically, defendant points to the inconsistencies presented within Ms. Monroe's testimony at the violation hearing. He alleges that the hearing justice "acted both unreasonably and arbitrarily" by accepting Ms. Monroe's incredulous testimony, ignoring what defendant proclaims is "the only credible version of the events—that the complaining witness would lie to put [defendant] in prison to keep him away from another woman." He contends that the evidence presented at the hearing can-

not support the hearing justice's determination that defendant violated his probation and that, therefore, the finding of a violation amounted to an abuse of the hearing justice's discretion.

■ After carefully reviewing the record before this Court, we are satisfied that the hearing justice did not act arbitrarily or capriciously when he declared that defendant violated his probation. This is not the first time this Court has been confronted with a case in which a victim of domestic violence later changes his or her story or presents inconsistent testimony after the abuser is arrested and charged.[7] The hearing justice stated that often, the ultimate determination of whether a defendant has kept the peace and has been of good behavior in these types of cases hinges upon the credibility of the various witnesses. When, as is the case here, an inquiry as to whether defendant violated his probation "turns on a determination of credibility," and after considering all the evidence, the hearing justice "accepts one version of events for plausible reasons stated and rationally rejects another version," this Court "can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred." *State v. Ferrara*, 883 A.2d 1140, 1144 (R.I.2005) (quoting *State v. Rioux*, 708 A.2d 895, 898 (R.I.1998)).

In this case, the hearing justice found Ms. Monroe to be a credible witness, and he provided an explanation of why he credited her testimony notwithstanding her apparent inconsistencies.[8] The hearing justice further clarified that "while there are some inconsistencies in her testimony, the thrust of it is believable and I accept it."

The defendant argues, however, that the hearing justice's factual findings were in-

---

7. *See State v. Cardona*, 969 A.2d 667, 669, 670–71 (R.I.2009) (victim reported to police that she witnessed her husband hit and kick her son, but at trial, denied informing the police of such); *State v. Medina*, 767 A.2d 655, 656 (R.I.2001) (victim reported to police that the defendant, victim's boyfriend, had struck her in the back with a beer bottle, but during a voir-dire examination, she denied that the beer bottle actually hit her, claiming that "the 911 call was made to get [the] defendant in trouble, not because she was in fear of [the] defendant"); *State v. Krakue*, 726 A.2d 458, 460, 463 (R.I.1999) (although the defendant's wife was unavailable at trial, the defendant was convicted after an officer testified that the defendant's wife reported that her husband had punched her in the eye and head and struck her in the back with a chair; however, at the defendant's motion for a new trial, the wife testified that the officer's trial testimony regarding her statement to him was untrue); *State v. Rioux*, 708 A.2d 895, 896–97, 899 (R.I.1998) (the defendant's former girlfriend testified that she had lied to police when she told them that the defendant had "grabbed and pummeled" her; however, this Court upheld the hearing justice's finding that the defendant had violated his probation).

8. He stated:

"I don't doubt for a second that she had some inconsistencies in her testimony. She clearly recanted to the police. She gave a reason today why she did it. She seems to have denied the telephone conversation, although there may have been a little conditioning there. There might have been something to the effect that she wasn't certain at one point, and certainly that's a factor. Nevertheless, clearly she made that statement. But, she was—if you look at it together, you sense that the reason why she might have made that statement is because of the fact that she knows that he did something wrong and she now holds his fate in her hands. So, if she testifies the way it happened, he's going down. If she testifies to the contrary in any way, he could be saved.

"So, while she did say it, I'm not so sure it means that she fabricated it. It just simply may mean that she was trying to decide in her own mind whether or not she should do what she had to do."

sufficient to sustain the burden of reasonable satisfaction. He likens his case to *State v. Forbes,* 925 A.2d 929, 934, 935 (R.I.2007), in which this Court held that a hearing justice acted arbitrarily in finding a violation, noting that "the hearing justice pointedly avoided making any factual findings relating to the underlying charge," but rather, made five findings of facts concerning the defendant's behavior, which in our opinion were not "sufficient to support an adjudication of probation violation." In *Forbes,* we held that the hearing justice's comment—"[w]hile I would be inclined to find [the defendant] at the very least assaulted [the victim], that's not my call"—was insufficient to sustain the violation adjudication because it was not clear that the hearing justice was making a definitive finding to his reasonable satisfaction. *Id.* at 935.

This case is readily distinguishable from *Forbes.* Here, the hearing justice made detailed findings to support his conclusion to his reasonable satisfaction. Specifically, he found that in the first incident on March 11, 2009, defendant and Ms. Monroe had an argument in which he hit her, causing a bruise to her eye. With respect to the second incident, the hearing justice found that Ms. Monroe was in fear of defendant as the result of the "same kind of tussle." Thus, he opined that the first incident could constitute an assault and battery and the later incident an assault. These findings are more than sufficient to support his ultimate determination that defendant did not keep the peace and was not of good behavior.

## B

### The Sentence Imposed

■ The defendant also argues that "the hearing justice erred when he denied the motion for reconsideration of the drastic remedy of revocation." To support this

contention, defendant cites *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), which stands for the proposition that before incarcerating a probation violator "other steps [should] be taken to protect society and improve chances of rehabilitation." *Id.* at 784, 93 S.Ct. 1756 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

This Court has held that "[a] hearing justice 'possess[es] wide latitude in deciding whether a probation violator's suspended sentence should be removed in whole, in part, or not at all.'" *Jackson,* 966 A.2d at 1230 (quoting *Christodal,* 946 A.2d at 817). In the case under review, the hearing justice clearly stated his reason for imposing the sentence. He explained the probationary period:

> "You sign a contract with the State of Rhode Island and you say, 'I'm going to stay out of trouble', and the exchange is as long as you stay out of trouble, you don't go back to jail; but if you get in any trouble, then the [s]tate has a long leash on you and they can pull that leash on you at any time and send you to jail. So, it's kind of a penal contract that you get a bit of a break and you don't go to jail for as long as you might have. * * * [O]bviously, it gives that person a chance to be on the street to rehabilitate himself."

The hearing justice then went on to explain to defendant that he believed that when the original sentence was imposed, "instead of throwing the book at you and giv[ing] you six years to serve flat, they gave you more than two years to serve so you can get out, roughly, maybe after eighteen months or so, twenty months, and then the rest is over your head for a period of time." He continued, "[s]o then you catch another break on a possession charge and you get some jail but not a lot.

And * * * the Judge that sentenced you that first time told you if you came back, he was going to give you the whole thing." The hearing justice concluded by stating:

"I just think that based upon the prior conduct, especially that conspiracy charge, which clearly, while it's not domestic in nature, certainly is assaultive in nature, it just seems to me that this fellow had a clear disregard for the law then, and little things that were testified to today, continues to have this disregard.

"The comments that she said he made, that he owned her, basically, that if she didn't get out of the shower, that he would kill her * * * shows a violence that is clearly indicative of the fact that he has not really been rehabilitated to date."

It is our opinion that the sentence the hearing justice imposed was a carefully considered and appropriate consequence for the defendant's refusal to uphold his promise to keep the peace and be of good behavior. Thus, we are wholly satisfied that the revocation of three years of the defendant's suspended sentence was a sustainable exercise of the hearing justice's broad discretion.

## IV

### Conclusion

As we detect no error of law in either the hearing justice's violation determination or the sentencing, we affirm both the judgment and order of the Superior Court. The record shall be remanded to the Superior Court.

Justice INDEGLIA did not participate.