**Supreme Court**

No. 2015-0123-C.A.

(P2/07-1875A)

State                               :

v.                               :

Sharif K. Fairweather.               :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                    :

v.                                       :

Sharif K. Fairweather.                   :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The defendant, Sharif K. Fairweather, seeks review of

an adjudication of a probation violation that was entered after a hearing in the Providence

County Superior Court on April 8, 2014.[1]   At the conclusion of that hearing, the hearing justice

found that Mr. Fairweather had violated the terms and conditions of his probation, and he

ordered him to serve seventy-two months of the seventy-eight months remaining on the

suspended sentence that he had received as a result of an earlier conviction.  The defendant

contends that the hearing justice acted arbitrarily and capriciously in finding that he had violated

the terms and conditions of his probation.  The defendant also challenges as "excessive" the fact

that the hearing justice executed seventy-two months of the original sentence.  This case came

before the Supreme Court pursuant to an order directing the parties to appear and show cause

why the issues raised in this petition should not be summarily decided.  After a close review of

the record and careful consideration of the parties' arguments (both written and oral), we are

---

[1]     This case is before us pursuant to this Court's having granted defendant's petition for a
writ of certiorari on May 28, 2015.

satisfied that cause has not been shown and that the issues raised in this petition may be decided at this time.

For the reasons set forth in this opinion, we quash the writ and affirm the judgment of the Superior Court.

## I

## Facts and Travel

On February 19, 2008, a judgment entered sentencing defendant to a seven-year suspended sentence with probation, after he had pled nolo contendere to one count of breaking and entering a dwelling. Subsequently, on June 29, 2012, after defendant had been found to be in violation of his probation, a judgment entered sentencing him to six months to serve, leaving seventy-eight months of his suspended sentence remaining. The defendant was still on probation on March 21 and 22, 2014, which is when the events at issue in this case transpired.

On March 24, 2014, the state filed a notice of probation violation pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure alleging that defendant had failed to comply with a condition of his probation by "fail[ing] to keep the peace and be of good behavior;" it is that notice of probation violation that gave rise to the instant case. On April 8, 2014, a probation-violation hearing was held in the Superior Court. We recount below the salient aspects of that hearing.

## A

## The Testimony of Clarissa Randall

Clarissa Randall testified that in March of 2014 she and Sharif Fairweather were "boyfriend and girlfriend" and she was "about seven months" pregnant with his child. She stated that, around 5:00 p.m. on what would have been March 21, she went to the house on Rhodes

Street in Providence which was the residence of Mr. Fairweather, whom she had not seen for over a month. She said that, after she arrived, defendant "came upstairs, greeted [her] for a few minutes, [and] went back downstairs," while she remained upstairs in his bedroom, where she stayed until about 8:30 or 9:00 when she went down to the kitchen to prepare some food. Ms. Randall further testified that defendant came into the kitchen in order to "check[]" on her and stayed for fifteen minutes. She stated that, after the food was prepared, she returned upstairs to eat it and then went to sleep.

Ms. Randall testified that, around 3:00 a.m. on the next morning, she was awakened by defendant, who was yelling; she described him as being "intoxicated." She stated that she told defendant that she was going to go home if he was going to argue with her. She added that defendant "got mad" and that she told him that she was leaving; she stated that he then grabbed her by her neck and slammed her into the wall. She said that she hit her head and her back against the wall and felt pain in her neck and in her lower back. She further testified that defendant picked up a knife and told her that he would kill her, causing her to feel threatened. Ms. Randall testified that she then left the house, walked to the corner of the street, and called the police, who met her at that corner. She said that she told an officer that she had hurt her back and head; she added that a rescue vehicle was called to transport her to the hospital.

On cross-examination, Ms. Randall testified that, shortly after she arrived at the Rhodes Street house, she encountered a woman named "Elaine," who told her that, on an earlier day, a woman who was a potential tenant had come to the house to look at a room and that defendant "was trying to help the [woman] to get into the place."

**B**

**The Testimony of Officer Joseph Pineau**

Joseph Pineau, an officer in the Providence Police Department, testified that, on March 22, he was instructed to report to a domestic disturbance and that, while he was en route, he was "flagged down" by a female, who he came to learn was Ms. Randall. He stated that Ms. Randall told him what had happened and that a rescue vehicle was called to transport her to the hospital.

Officer Pineau further testified that he, along with two other officers, went to the Rhodes Street house, where he and one of the other officers arrested defendant. Officer Pineau stated that, in the course of being arrested, defendant was "pull[ing] away" and was "cussing [the officers], telling [them] that he was going to * * * assault [them]."

On cross-examination, Officer Pineau stated that he "could not [one] hundred percent say that [defendant] was intoxicated" at the time in question. Officer Pineau also acknowledged on cross-examination that, in a "Providence Incident Report" prepared after he had gone to the hospital to inquire about Ms. Randall, he had indicated that Ms. Randall's injuries were "non-conclusive."

**C**

**The Testimony of Sharif Fairweather**

Mr. Fairweather testified that, after Ms. Randall arrived at the Rhodes Street house, they watched television together in his room for a short time. He testified that she then went downstairs to prepare food and that he eventually went downstairs for two or three minutes in order to "check on" her. He testified that he then returned upstairs to finish watching a movie and that he thereafter went back downstairs to JB's room. (JB was a friend of defendant who lived on the first floor of the Rhodes Street house.)

The defendant further testified that he did not see Ms. Randall again until he returned to his bedroom a "few hours" later, at which point, she "got mad" and pointed out that she had been at the house for seven hours while defendant had been with his friends and not with her. It was his testimony, however, that he had spent two to three hours with Ms. Randall out of the seven hours.

Mr. Fairweather testified that a woman named Elaine (who he said was JB's wife and who "stay[ed]" with JB at the Rhodes Street house) had told Ms. Randall "something about a girl moving in [to the Rhodes Street house]." He stated that he told Ms. Randall that he "didn't try to have [the woman] moved in;" he added that he told Ms. Randall that a friend of his had introduced the woman at issue to JB, who "was telling her about the room." The defendant said that there ensued a "heated argument" between Ms. Randall and him with respect to the female potential tenant.

The defendant testified that he had never: "put [his] hand around Ms. Randall's throat;" "rip[ped] her off the bed;" "[thrown] her against the wall;" "possess[ed] a steak knife;" or "[held] a steak knife in a threatening manner toward Ms. Randall." He said that their argument never became "physical." He also asserted that she had "said what she said" as a reaction to his suggestion that they should end their relationship; he added that she reacted to that suggestion by getting "mad" and that she then "ripped [his] ring off, threw it on the floor, [and] walked out the door." The defendant testified that, after the argument with Ms. Randall, he went downstairs for a while and that, when he returned to the bedroom, Ms. Randall was no longer there.

# D

## The Hearing Justice's Decision

In his bench decision, the hearing justice began by reviewing the testimony of each of the witnesses. He stated that he was "impressed by Ms. Randall," who he said had been "forthright in testifying about the events that occurred that night." He noted that she appeared to be a "good person in the sense [that] she didn't seem to have any axe to grind or she didn't seem to have any motive of getting even." He further noted that there was no variance between her direct testimony and her testimony on cross-examination; he found her to be credible. The hearing justice also found Officer Pineau to be credible. In contrast, the hearing justice noted that defendant was unable to "keep his story straight, even between direct examination and cross-examination as to what actually happened * * *." He also stated that defendant had a "motive to lie and to paint the most favorable picture * * *." In view of these findings, the hearing justice found that Mr. Fairweather had violated his probation as he had "failed to keep the peace and be of good behavior on or about March 22, 2014 * * *." He specifically pointed to defendant's actions in "assaulting Ms. Clarissa Randall and also [in] resisting arrest and being disorderly with the police * * *."

After hearing argument from counsel with respect to sentencing, the hearing justice reviewed defendant's record, taking note of (inter alia) the crime for which he had received the seven-year suspended sentence in 2008. The hearing justice indicated that the record reflected that, since receiving that suspended sentence, defendant had been presented as a probation violator on numerous occasions as a result of assaults that he had committed—"particularly on women with whom he's in a relationship or had a relationship." The hearing justice twice alluded to one particular instance, in which a woman with whom defendant had been in a

relationship was found with "visible bruises and abrasions and contusions about her face," which the woman said were the result of defendant having assaulted her. The hearing justice further noted that defendant had received "lenient treatment throughout the course of his criminal career" and that the "little punishment" that had been meted out to him had not "in any way, shape, or form deterred Mr. Fairweather, because he continues to engage in this type of behavior * * *." The hearing justice did recognize that at one point in time there had been a "hiatus" in defendant's criminal activity; but he added that he did not know whether that "hiatus" was the result of defendant staying "out of trouble" or of not being "caught as he had been in the past." The hearing justice stated that he could "only draw one conclusion"—namely, that defendant "cannot comport himself within the confines of the law or keep the peace and be of good behavior." Consequently, the hearing justice ordered defendant to serve seventy-two months of the seventy-eight months remaining on his previously imposed suspended sentence with the balance of six months remaining suspended with probation. Thereafter, defendant filed a petition for a writ of certiorari, which this Court granted.

## II

### Standard of Review

It is well established that the sole issue for the court to consider at a probation-violation hearing is "whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." State v. Ditren, 126 A.3d 414, 418 (R.I. 2015) (internal quotation marks omitted); see State v. Prout, 116 A.3d 196, 202 (R.I. 2015). Additionally, the state's burden of proof at a probation-violation hearing is "much lower than that which exists in a criminal trial[:] the state need only show that reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation." State v.

Washington, 42 A.3d 1265, 1271 (R.I. 2012) (internal quotation marks omitted); see State v. Beaudoin, No. 2012-325-C.A., 2016 WL 1637813 at *4 (R.I. April 26, 2016).

We have stated that in "determining whether or not a defendant has committed a probation violation, the hearing justice is charged with weighing the evidence and assessing the credibility of the witnesses." Ditren, 126 A.3d at 418 (internal quotation marks omitted); see State v. Raso, 80 A.3d 33, 42 (R.I. 2013).[2] We have further stated that deference should be accorded to "the assessment of the credibility of witnesses made by a judicial officer who has had the opportunity to listen to live testimony and to observe demeanor." Washington, 42 A.3d at 1271 (internal quotation marks omitted); see State v. Gibson, 126 A.3d 427, 431 (R.I. 2015); State v. Jensen, 40 A.3d 771, 778 (R.I. 2012).

This Court's review of a finding of probation violation is "limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." Prout, 116 A.3d at 202 (internal quotation marks omitted); see Gibson, 126 A.3d at 431.

---

[2] We have spoken as follows with respect to the nature of our review of a hearing justice's credibility determination in the context of a probation-violation hearing:

> "When * * * an inquiry as to whether defendant [has] violated his probation turns on a determination of credibility, and after considering all the evidence, the hearing justice accepts one version of events for plausible reasons stated and rationally rejects another version, this Court can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred." State v. Shepard, 33 A.3d 158, 164 (R.I. 2011) (internal quotation marks omitted).

### III

### Analysis

### A

### The Finding of a Probation Violation

The defendant contends that the hearing justice erred in finding that he had violated the conditions of his probation. More specifically, he contends that the "hearing justice acted arbitrarily and capriciously in finding a violation solely based mainly on Clarissa Randall's testimony which was uncorroborated in the record and was motivated by jealousy and bias." In defendant's view, Ms. Randall was "jealous and demoralized" due to his "essentially ignor[ing]" her on March 21, which he contends gave her reason to "fabricate an allegation against [him]." He also points to the following facts as showing that the hearing justice's credibility assessment of Ms. Randall was "unsupportable:" (1) the fact that she claimed that defendant was intoxicated when the March 22 scene took place, whereas defendant asserts that Officer Pineau testified that he did not see signs of intoxication; (2) the fact that she testified that the assault by defendant was physically violent, whereas "no police officers or hospital workers saw injuries on her body;" and (3) the fact that she asserted that defendant threatened her with a steak knife, but, as defendant alleges, "the officers did not check to see if there was one present in [his] room." The defendant also contends that the hearing justice's assessment of defendant's "version of events was little more than cursory." Finally, defendant contends that the "hearing justice acted arbitrarily and capriciously when he found that [defendant] failed to be of good behavior in his encounter with the Providence police because [his] conduct did not rise to the level of failure to keep the peace."

The record reflects that the hearing justice scrutinized Ms. Randall's testimony, assessed her credibility, and ultimately accepted her version of events. See Ditren, 126 A.3d at 418. The hearing justice found her to be "credible" and "forthright in testifying about the events that occurred that night." He noted that her testimony did not vary between direct examination and cross-examination, and he commented that she appeared to be a "good person in the sense [that] she didn't seem to have any axe to grind or she didn't seem to have any motive of getting even * * *." After scrutinizing the record, we are unable to say that the hearing justice lacked plausible reasons for accepting Ms. Randall's version of events. See State v. Shepard, 33 A.3d 158, 164 (R.I. 2011).

We perceive no merit in defendant's contention that the hearing justice's credibility determination was "unsupportable" due, in part, to the fact that Ms. Randall testified that defendant was "intoxicated," whereas, according to defendant, Officer Pineau testified that he did not observe signs of intoxication in defendant. We note that, even if the testimony of these two witnesses was inconsistent, "it would not preclude a determination that the witnesses were credible." State v. Lopez, 129 A.3d 77, 85 (R.I. 2016); see Jensen, 40 A.3d at 781. Moreover, Officer Pineau did not testify that Mr. Fairweather was not intoxicated, but rather that he "could not [one] hundred percent say that [defendant] was intoxicated * * *." We similarly find meritless defendant's contention that Ms. Randall's credibility is undermined by the fact that, although she stated that he was physically violent towards her, "no police officers or hospital workers saw injuries on her body * * *." Not every act of physical violence results in perceptible injuries. We also note that, while Officer Pineau testified at the hearing that he had stated in a "Providence Incident Report" that Ms. Randall's injuries were "non-conclusive," the text of the report itself actually states that Ms. Randall's injuries "were not conclusively known

at the time of th[e] report." Likewise, we are not persuaded by defendant's contention that the hearing justice's determination that Ms. Randall was credible is undermined by the fact that the police did not find the knife that she said defendant held during the events in question. We note that Officer Pineau's report states that defendant had "refused to give Police access" to his second-floor apartment.

The hearing justice also reviewed Mr. Fairweather's testimony and assessed his credibility. See Ditren, 126 A.3d at 418. In contrast to the hearing justice's determination with respect to the credibility of Ms. Randall, the hearing justice noted that defendant had a "motive to lie and to paint the most favorable picture * * *." He further noted that defendant seemed unable to "keep his story straight, even between direct examination and cross-examination as to what actually happened * * *." It is our view that the hearing justice's rejection of defendant's version of the events was by no means irrational. See Shepard, 33 A.3d at 164.

After a careful review of the record, it is clear that the hearing justice had plausible reasons to accept Ms. Randall's version of the events and to reject defendant's version; in our judgment, the hearing justice's findings were more than sufficient to constitute a basis for concluding that defendant had not kept the peace and been of good behavior. See id. at 165. We perceive no basis for holding that the hearing justice acted arbitrarily or capriciously in determining that defendant had violated the terms and conditions of his probation.

Given our conclusion that the hearing justice did not act arbitrarily or capriciously in determining that defendant had violated the terms and conditions of his probation in view of his interactions with Ms. Randall, we need not reach the issue of whether his subsequent interactions with the police would also have provided a sufficient basis for such a determination.

**B**

**The Hearing Justice's Further Ruling**

The defendant contends that the sentence meted out to him by the hearing justice was "excessive;" he further contends that the "hearing justice erred when he sentenced [him] based on considerations unrelated to his original offense * * *." In particular, defendant points to the fact that, in his view, the "hearing justice was swayed by a previous unrelated [Rule] 32(f) presentment regarding a case not before him, which he referenced twice in his sentencing." Additionally, defendant points to the fact that the hearing justice "looked to the thickness of [his] file" and noted the "lenient treatment" that defendant had previously received as a factor in his decision to execute seventy-two months of defendant's suspended sentence. The defendant further contends that the "hearing justice neglected to consider * * * that the vast majority of Mr. Fairweather's charges on the 'Criminal History Record' attached by the state to the [Rule] 32(f) package were from 1997 or before * * *."

It is well established that a hearing justice has "wide discretion to determine whether to execute any or all of a defendant's previously suspended sentence." State v. McKinnon-Conneally, 101 A.3d 875, 879 (R.I. 2014); see State v. Roberts, 59 A.3d 693, 697 (R.I. 2013). This Court's "review of a probation-violation sentence is for an abuse of discretion only." McKinnon-Conneally, 101 A.3d at 879.

We recognize that the hearing justice did consider defendant's criminal record and previous Rule 32(f) presentments—with particular attention to one of those. With respect to defendant's contacts with the criminal justice system, the hearing justice stated that the court could "only draw one conclusion, and that is that [defendant] cannot comport himself within the confines of the law or keep the peace and be of good behavior * * *." The hearing justice further

stated that the "lenient treatment" defendant had received in the past had "not in any, way, shape, or form deterred Mr. Fairweather, because he continues to engage in this type of behavior * * *." In our view, the hearing justice did not abuse his discretion in considering defendant's prior record as it relates to his ability to be rehabilitated, which is a factor to be considered in sentencing. See Shepard, 33 A.3d at 165-66; State v. Jackson, 966 A.2d 1225, 1230 (R.I. 2009); State v. Sylvia, 871 A.2d 954, 958-59 (R.I. 2005) (per curiam); State v. Wisehart, 569 A.2d 434, 437 (R.I. 1990).

Furthermore, in spite of defendant's argument to the contrary, the record indicates that, in determining defendant's sentence, the hearing justice did consider the fact that the majority of defendant's prior incidents at issue had occurred in 1997 or before. The hearing justice explicitly stated that there had been a "hiatus" in defendant's criminal activity.

It is clear to us that, after adjudicating the defendant to be a violator, the hearing justice did not abuse his discretion in fashioning the defendant's sentence. The hearing justice's execution of seventy-two months of the defendant's suspended sentence was not "excessive" and did not constitute an abuse of discretion. See McKinnon-Conneally, 101 A.3d at 879-80. After reviewing the record, it is our view that the hearing justice properly considered the defendant's lack of amenability to rehabilitation and did in fact recognize that the majority of the defendant's prior offenses had taken place at an earlier time before fashioning the defendant's sentence.

# IV

## Conclusion

For the reasons set forth in this opinion, we quash the writ and affirm the judgment of the Superior Court. We remand this case to the Superior Court with our decision endorsed thereon.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

---

**TITLE OF CASE:**       State v. Sharif K. Fairweather.

**CASE NO:**            No. 2015-123-C.A.
                        (P2/07-1875A)

**COURT:**              Supreme Court

**DATE OPINION FILED:**  June 3, 2016

**JUSTICES:**           Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                        Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

                        For State:  Lauren S. Zurier
                                    Department of Attorney General

                        For Defendant:  Lara E. Montecalvo
                                        Office of the Public Defender

                                        Hayley Hutchins
                                        Rule 9 Student Attorney