January 8, 2018

**Supreme Court**

State                :             No. 2016-283-C.A.
                                      (P1/82-1097A)

v.                :

Walter Simpson.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| State | : | No. 2016-283-C.A. |
| | | (P1/82-1097A) |
| v. | : | |
| Walter Simpson. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendant, Walter Simpson (Simpson or defendant), appeals from a Superior Court judgment adjudging him to have violated the terms and conditions of his probation and executing eighteen years of a twenty-year suspended sentence. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the decision of the hearing justice.

**I**

**Facts and Procedural History**

In 1985, Simpson was convicted of one count of first-degree sexual assault, which this Court affirmed on appeal. *See State v. Simpson*, 520 A.2d 1281, 1282 (R.I. 1987). Simpson was sentenced to fifty years at the Adult Correctional Institutions with thirty years to serve and twenty years suspended with probation. On December 17, 2015, the state filed a notice of probation violation pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. A

three-day violation hearing was held in February 2016.  Below, we summarize the evidence adduced at the hearing.

The complaining witness, whom we shall refer to as Valerie,[1] testified that, on December 14, 2015, she traveled to Woonsocket for a medical appointment.  After the appointment, she crossed the street to a bus stop to take a bus home.  There, she met a man named "Reggie,"[2] who, as Valerie testified, asked her if she "wanted to get high with him."  She answered in the affirmative, and the two proceeded to a nearby park.  After about fifteen minutes in the park, they headed to Diamond Hill Road, where Simpson lived, because Simpson "didn't want to get high in the park."  About ten to fifteen minutes after leaving the park, they arrived at Simpson's house, where they went into an unfinished basement with a dirt floor and a couple of mattresses in the corner.

Valerie testified that Simpson "laid one of the mattresses down on the ground" and then, when she "tried to turn and walk away, * * * he grabbed [her] and threw [her] * * * face down[] on the mattress."  Simpson then put Valerie's hands behind her back; and, when she tried to leave, he told her "that he was a member of the police force."  He then "pulled [her] pants down and put his penis into [her] vagina."  Valerie testified that she "struggled" but could not get away.  She said that Simpson then "put his penis into [her] mouth" but that she "kind of like threw up on him a little bit" so he "inserted his penis" into her vagina again.  Valerie further testified that, "when [they] went to switch positions, * * * [she] pretended [she] was going to * * * put his penis in [her] mouth, but * * * instead [she] leaned over him and grabbed [her] bag * * * and started to run * * *."  When Simpson caught her, she screamed for help.  Then "he

---

[1] We use a pseudonym to refer to the complaining witness.
[2] She identified "Reggie" as Simpson at the violation hearing.

pushed [her] and he said, 'Fine, go,' and [she] started to run * * * out of the basement." She then "called the police because [Simpson] was following [her] down the street."

Valerie testified that she told the 911 operator that she "had been raped and that somebody was chasing [her] down the street." When the police arrived, they drove her around to visually identify Simpson's house. The police officers then searched the location she identified and drove her to Landmark Hospital.

The state then introduced as an exhibit a photo array that the Woonsocket Police Department showed to Valerie on December 14, 2015. Valerie identified Simpson as her attacker and marked the photo with a statement that she was 75 percent sure that the photo she identified was accurate. The state also introduced a recording of Valerie's 911 call. Additionally, the state introduced into evidence photographs taken by the police of Simpson's basement, which depicted a basement with two mattresses within it.

Patrolman Justin Mowry of the Woonsocket Police Department testified that he responded to a phone call the police department had received from an unknown female who was screaming and running down the roadway in the area of Diamond Hill Road and Wood Avenue. Upon his arrival in the area, Valerie waved him down and told him she had been assaulted by a man she referred to only as "Reggie." Officer Mowry testified that Valerie directed him to the location of the assault, 594 Diamond Hill Road. He also stated that the police were able to determine that a Walter Simpson, who used "Reggie" as an alias, resided on the third floor of that address. Officer Mowry proceeded to investigate the multifamily dwelling. He observed a dirty basement with two mattresses in the corner leaned against a pole. He then went up to the third floor, where Simpson resided, and spoke to Simpson's girlfriend, who informed him that Simpson was at school.

Simpson testified on his own behalf. He stated that he lived at 592 Diamond Hill Road in Woonsocket.[3] At around 3:50 p.m. on December 14, 2015, he left his apartment and went to the bus stop to catch a bus because he had class at the Community College of Rhode Island. At the bus stop, Valerie "was soliciting gentlemen"; one man went with her to the park across the street, and then he returned to the bus stop. Valerie then gave Simpson a napkin with her phone number written thereon. He later discovered that the phone number was incorrect. The defendant testified that Valerie began asking about drugs. "She * * * was interested in crack," and Simpson told her that he did not smoke crack.

Simpson testified that he and Valerie went across the street to the park and Valerie "attempted to perform oral sex" on him, but it started raining; so she asked if they could go to his house. Simpson "told her no" because "[his] girl [wa]s at [his] house." Simpson testified that Valerie decided "it would be best" if they went to his house and that she "was under the impression that [he] was a drug dealer." They then walked to Diamond Hill Road and went to the basement of Simpson's house. Simpson testified that Valerie "went to perform oral sex" on him and then they began to have sexual intercourse. He further testified that, "[i]n the process of having sexual intercourse, [he] came to realize that" he was cheating on his girlfriend and "pushed her away a little bit" and told her to "just leave." Valerie "cussed [him] out and stormed up the stairs," and that was the last Simpson saw of her.

At the conclusion of the evidence, the hearing justice found that Simpson had violated his probation and executed eighteen years of Simpson's twenty-year suspended sentence. The hearing justice explained,

---

[3] Officer Mowry testified that 592 and 594 Diamond Hill Road are in the same building with a common entryway.

> "the evidence in this probation violation hearing suggests by the overwhelming weight of evidence that on December 14th, 2015 he enticed a young woman to his apartment with promises of smoking crack. Once in the cellar or basement of his apartment, he placed a mattress that had been leaning against the wall onto the floor and proceeded to overpower her and sexually assault her."

The hearing justice accepted Valerie's version of events, explaining that Valerie "was a good witness on her own behalf" and that "[h]er description of the events surrounding the sexual assault [was] credible." On the other hand, the hearing justice found Simpson's testimony not credible.

The hearing justice went on to explain: "Although the standard of proof in a probation violation proceeding is reasonably satisfactory evidence, I have decided this case by a higher standard, fair preponderance of the evidence." She found,

> "the [s]tate proved [that Simpson] violated his probation by a fair preponderance of the evidence. Actually, the evidence was overwhelming going far beyond 51 percent required of fair preponderance of the evidence in favor of finding that [Simpson] violated his probation. And let me make it very clear. His violation of the probation that I'm finding, his bad behavior, was not merely what he testified to, that he was solicited by a prostitute, took her home. I find by the evidence that I accept as true, as testified to by [Valerie], that of a sexual assault."

Simpson timely filed a notice of appeal.

## II

### Standard of Review

"At a probation-violation hearing, [t]he sole issue for a hearing justice * * * is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. Prout*, 116 A.3d 196, 202 (R.I. 2015) (quoting *State v. Barrientos*, 88 A.3d 1130, 1133 (R.I. 2014)). "Because probation-violation hearings are not part of a criminal prosecution, the burden of proof at a probation-violation hearing is much lower

than the standard of beyond a reasonable doubt used in criminal trials." *Id.* (quoting *State v. Raso*, 80 A.3d 33, 42 (R.I. 2013)). "[T]he state need only show that reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation." *Id.* (quoting *Barrientos*, 88 A.3d at 1133). "In making this determination, 'the hearing justice weighs the evidence and assesses the credibility of the witnesses.'"[4] *Id.* (quoting *Barrientos*, 88 A.3d at 1133).

It is well established that "[o]n review, '[t]his Court accords great deference to the hearing justice's credibility assessments' and 'will not second-guess supportable credibility assessments of a hearing justice in a probation-revocation hearing.'" *State v. Beaudoin*, 137 A.3d 726, 732 (R.I. 2016) (quoting *Prout*, 116 A.3d at 202). "Rather, 'our review is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" *Id.* (quoting *Prout*, 116 A.3d at 202).

## III

### Discussion

The defendant's first assertion of error is that the "[h]earing [j]ustice went far beyond the scope of the probation violation hearing in deciding that Mr. Simpson had committed first degree sexual assault by a fair preponderance of the evidence." Specifically, he takes issue with the hearing justice's statement that "I find by the evidence that I accept as true, as testified to by [Valerie], that of a sexual assault." Based upon our review of the record, we are satisfied that the

---

[4] "On June 21, 2016, this Court entered an order adopting an amendment to Rule 32(f) of the Superior Court Rules of Criminal Procedure that changes the burden of proof at a probation violation hearing to 'a fair preponderance of the evidence.'" *State v. Brown*, 140 A.3d 768, 780 n.9 (R.I. 2016) (quoting *In re Amendments to Superior Court Rules of Criminal Procedure and Sentencing Benchmarks*, at 1 (R.I., filed June 21, 2016) (mem.)). This amendment has no bearing on this case.

hearing justice committed no error in finding that defendant had violated the terms and conditions of his probation.

The hearing justice carefully reviewed the evidence and gave complete credence to Valerie's testimony "on all material issues." The hearing justice considered Valerie's criminal history as well as notes that Valerie had made to refresh her recollection, which the hearing justice described as "odd." Nevertheless, the hearing justice concluded that Valerie was a strong witness who testified consistently and "held up very well in cross-examination." Contrariwise, the hearing justice described defendant's testimony as "virtually ridiculous." She rejected his version of events.

After considering the evidence, the hearing justice declared that it was her responsibility to determine whether defendant's conduct "on the day in question had been lacking in the required good behavior expected and required by his probationary status." She then announced that she would apply a "fair preponderance of the evidence" burden of proof, rather than the then-required lesser standard of "reasonably satisfactory evidence." She ultimately concluded that the state proved that defendant had violated his probation by a fair preponderance of the evidence.

In the context of this case, we are of the opinion that the hearing justice's characterization of defendant's conduct as "that of a sexual assault" was merely stating the obvious. Valerie's testimony, which the hearing justice accepted as true, bespoke of behavior by defendant that clearly can be described as a sexual assault whereas defendant's testimony, even if given credence, amounted to an admission that he solicited a prostitute, conduct that would also support a violation adjudication. By crediting Valerie's testimony, the hearing justice was necessarily subscribing to the sexual-assault version as the basis for the violation finding.

To the extent that defendant ascribes error to the hearing justice's employment of the preponderance of the evidence standard, we need not ponder long. The defendant did not object to this at the hearing and, in fact, conceded at oral argument that he was not challenging the burden of proof standard that the hearing justice applied.

Finally, defendant asserts that the hearing justice abused her discretion in sentencing him to serve eighteen years of his previously suspended sentence. He argues that the "invocation of 18 years to serve suggests that the sentence is motivated by a decision to punish Mr. Simpson for a criminal offense for which he is presumed innocent and has yet to be tried."

It is well established, however, "that a hearing justice has 'wide discretion to determine whether to execute any or all of a defendant's previously suspended sentence.'" *State v. Fairweather*, 138 A.3d 822, 829 (R.I. 2016) (quoting *State v. McKinnon-Conneally*, 101 A.3d 875, 879 (R.I. 2014)). We review a probation-violation sentence "for an abuse of discretion only." *Id.* (quoting *McKinnon-Conneally*, 101 A.3d at 879).

In imposing the sentence, the hearing justice considered the severity of defendant's initial offense, the nature of the conduct underlying the probation violation, and the fact that he had been "on the street for six and a half years." She found that he lied to the police, lied under oath, and that his conduct was "heinous." She concluded that he was "not a good candidate for rehabilitation" and that he needed to be incarcerated for the safety of the community.

The behavior that provided the basis for the probation violation involved the same type of violent, assaultive conduct for which defendant was originally convicted. Clearly, this pattern of conduct demonstrates an inability of defendant to conform his conduct to the mores of society and suggests that he is not amenable to rehabilitation. We have often stated that rehabilitation is a "factor to be considered in sentencing." *Fairweather, 138 A.3d at 829.*

Therefore, we are of the opinion that, by executing eighteen years of his original suspended sentence, the hearing justice was acting well within the ambit of her discretionary authority.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Walter Simpson. |
| **Case Number** | No. 2016-283-C.A.<br>(P1-82-1097A) |
| **Date Opinion Filed** | January 8, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For State:<br><br>Christopher R. Bush<br>Department of Attorney General<br><br>For Defendant:<br><br>Susan B. Iannitelli, Esq. |